WYNETTE A. RAGSDALE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ESTATE OF EDWARD S. RAGSDALE, DECEASED and WYNETTE A. RAGSDALE, SURVIVING SPOUSE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ragsdale v. Commissioner
Docket Nos. 2158-80, 2159-80.
United States Tax Court
T.C. Memo 1981-322; 1981 Tax Ct. Memo LEXIS 423; 42 T.C.M. (CCH) 213; T.C.M. (RIA) 81322; June 23, 1981. Luther S. Fouts, Jr., and Glenn H. Strother, for the petitioners. Bonnie L. Cameron and W. Preston White Jr., for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency of $ 6,333.07 and an addition to tax under section 6653(a), I.R.C. 1954, [1] in the amount of $ 316.65 in the Federal income tax of Edward S. Ragsdale, Sr. (now deceased) and Wynette A. Ragsdale for the calendar year 1976 and a deficiency for the calendar year 1977 in the amount of $ 7,025.34 in the Federal income tax of Wynette A. Ragsdale. *423 Respondent concedes that the addition to tax under section 6653(a) is not applicable to the year 1976, leaving for our decision: (1) whether petitioners are entitled to dependency exemption deductions for their son, his wife and two children in 1976 and 1977; [2] (2) whether petitioners are entitled to a medical expense deduction for expenditures paid by them and by their son and his wife in 1976 and 1977 and, if so, in what amounts; and (3) whether petitioner Wynette A. Ragsdale is entitled to a miscellaneous deduction for publications in the amount of $ 66.03 in the year 1977. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Wynette A. Ragsdale (petitioner), who resided in Atlanta, Georgia, at the time of the filing of the petition in this case, filed a joint Federal income tax return for herself and her deceased husband for the calendar year *424 1976 with the Internal Revenue Service Center in Chamblee, Georgia. Petitioner filed her individual Federal income tax return for the calendar year 1977 with the Internal Revenue Service Center in Chamblee, Georgia. Edward S. Ragsdale, Sr. (Mr. Ragsdale) was born on December 27, 1895, and he and petitioner were married on May 22, 1944, and remained married until Mr. Ragsdale's death. Petitioner was employed by the DeKalb County Board of Education during the years 1976 and 1977. Prior to 1965, when he retired at the age of 70, Mr. Ragsdale was an attorney for the Federal Trade Commission in Atlanta, Georgia. He died on November 14, 1976, after a serious illness which lasted for four months. There was one child of the marriage of Mr. Ragsdale and petitioner, Edward S. Ragsdale, Jr. (Edward), who was born in 1948. Edward married Shelia Charles Ragsdale. There was one child of this marriage, Melanie Denise Ragsdale. In a final judgment and decree entered on November 30, 1971, Shelia Charles Ragsdale divorced Edward. The settlement agreement provided that Shelia was to have custody of the child, Melanie. Edward was to pay $ 150 per month for the support of Melanie until she *425 became self-supporting or reached the age of 21. In addition, Edward had the right to claim Melanie as a dependent on his State and Federal income tax returns. Mary Margaret Frederick Jones (Mary Margaret) married Michael Haywood Jones on June 6, 1969. There was one child of this marriage, Jennifer Alyson Jones. On September 6, 1972, Mary Margaret and Michael Haywood Jones were divorced. Mary Margaret was granted custody of Jennifer and Mr. Jones was required to pay $ 150 per month for child support and to pay all medical bills incurred by Jennifer in excess of $ 400 per year until the child marries, completes her college education, dies, becomes self-supporting, or becomes 18 years of age, whichever event first occurs. Mary Margaret and Edward were married prior to the year 1976. On July 28, 1976, Edward adopted Jennifer. During 1976 a checking account, numbered XXXX-XXXX-XXX-X3-368, was maintained at the Citizens and Southern National Bank, Atlanta, Georgia, in the name of Mr. Ragsdale. Petitioner had signature authority on this account and, in fact, wrote most of the checks on the account. On almost every check on which the name of the payor did not indicate the purpose *426 of the check, petitioner would make a short notation on the lower left-hand portion of the check. In addition, during the calendar years 1976 and 1977, another account, numbered 0611-1291-806-76-539, was maintained at the Citizens and Southern Emory Bank, Decatur, Georgia, in petitioner's name. During 1976, petitioner issued checks on account number XXXX-XXXX-XXX-X3-368 at the Citizens and Southern National Bank, Atlanta, Georgia, for nurses, sitters, and ambulances in connection with the last illness of Mr. Ragsdale in the amount of $ 5,229.26. Also during 1976, petitioner issued checks on account number XXXX-XXXX-XXX-X6-539 at the Citizens and Southern Emory Bank, Decatur, Georgia, for nurses, sitters, and doctors in connection with the last illness of Mr. Ragdale in the amount of $ 399.50. These expenses totaled $ 5,628.76 in 1976 and petitioner was not reimbursed by insurance. During the year 1977, petitioner wrote checks for medical expenses for herself and in connection with the last illness of Mr. Ragsdale in the amount of $ 160. On the United States Estate Tax Return for the Estate of Mr. Ragsdale, filed on August 11, 1977, medical expenses were claimed as a debt *427 of the estate in the amount of $ 2,208.30. During the calendar years 1976 and 1977, Edward and Mary Margaret were full-time students in the Department of Psychology of the Graduate Faculty of the New School for Social Research located at 65 Fifth Avenue, New York City, working toward their respective Ph.D. degrees and making satisfactory progress in that direction. During these years they maintained an apartment in which they lived in New York City. During this time the only checking account which either of them maintained was in their joint names at the First National City Bank in New York City. During 1977 the bank changed its name to Citibank, N.A. For the years 1975, 1976, and 1977, Edward maintained a stock account with Merrill Lynch, Pierce, Fenner & Smith, Inc. During the first half of 1975, his account was located in Atlanta, Georgia, but in June 1975 his account was transferred to New York City where it remained during the years in issue. As of January 1, 1976, Edward owned the following stocks held in his brokerage account: Number
Name of Stock
of Shares
NCNB
2900
Adams Express
380
American Electric Power Company
102
Atlanta Gas Light Company
310
Carriers General Corporation
136
Columbia Gas System
100
Consolidated Edison, N.Y.
100
Financial General Bkshrs, Inc.
273
Financial Mortgage and Realty Corp.
26
Ford Motor Company
25
International Bank of Washington, D.C.
209
NCNB Corp.
300
National Dist. & Chem. Corp.
50
Northern Natural Gas
228
Petroleum Corp. of America
354
Potomac Electric Power Company
100
Roadway Express, Inc.
864
South Carolina Electric Gas
854
Southern Company
200
United Corp.
100
Cons Invest Trust
2
Surveyor Fd New Md $ 1
484
*428 During the years 1976 and 1977, Edward sold some of the stock held in his account at Merrill Lynch, Pierce, Fenner & Smith, Inc. He received dividends and withdrew money from that account. In 1977 Edward reported a gain of $ 5,071.29 on sales of his own securities in the amount of $ 24,130.89. He also reported long-term capital gain of $ 602.10 on sales of securities owned by the estate of Edward S. Ragsdale, Sr., for which he received $ 12,730.73 bringing the total amount of proceeds on sales of securities in 1977 reported by Edward on his tax return to $ 36,861.62. As of December 30, 1977, Edward owned the following stocks: Number
Name of Stock
of Shares
American Electric Power Company
114
Atlanta Gas Light Company
310
Northern Natural Gas
228
Petroleum & Res Corp.
200
Potomac Electric Power Company
100
Roadway Express, Inc.
800
South Carolina Electric Gas
300
At the time of the death of Mr. Ragsdale, petitioner and her son, Edward, were the only heirs. Under Georgia law, they each received a one-half share of the estate. On November 3, 1977, petitioner and her son filed a petition for No Administration on the Estate of Mr. Ragsdale in *429 the Probate Court of DeKalb County, Georgia. On December 5, 1977, the Probate Court of DeKalb County, Georgia, entered an Order that No Administration was necessary on the Estate of Mr. Ragsdale. On November 14, 1976, the date of his death, Mr. Ragsdale had a net worth of $ 231,761.32 which consisted of the following assets and liabilities: Assets
Amount
Real Estate
$ 1,000.00
Stocks and Bonds
246,794.90
Mortgages, Notes and Cash
643.84
Insurance
15,868.92
Miscellaneous
300.00
Total
$ 264,607.66
Liabilities
Amount
Funeral Bills and Other Expenses
$ 3,056.08
Debts
29,790.26
Total
$ 32,846.34
Net Worth
$ 231,761.32
On December 27, 1972, Mr. Ragsdale transferred Travelers Insurance Policy No. 1597693, with a face value of $ 10,000, to his son Edward and upon the death of Mr. Ragsdale in 1976 the proceeds of the policy were paid to Edward. Edward and Mary Margaret filed individual Federal income tax returns for 1976 and 1977 and claimed their filing status as "Married filing separately." Mary Margaret's return for the calendar year 1977 is not in evidence. Edward and Mary Margaret each claimed one exemption on the return for *430 the calendar year 1976 and Edward claimed one exemption on his return for the calendar year 1977. Edward reported total income on his individual Federal income tax returns in the amount of $ 3,128.61 and $ 15,789.68 for the calendar years 1976 and 1977, respectively. Edward's return for 1976 showed dividends, prior to the exclusion, of $ 3,610.77, interest of $ 218, and capital gains before an offset by a capital loss carryover from prior years of $ 2,150.61. Mary Margaret reported total income on her individual Federal income tax return for the calendar year 1976 in the amount of $ 1,040.23. During 1976 and 1977 Edward was the patient of Murray D. List, Ph.D., New York City, in psychotherapy. Mary Margaret was in treatment with Nina D. Fieldsteel, Ph.D., New York City. Jennifer A. Ragsdale, their daughter, was seen for psychotherapy by Ava L. Siegler, Ph.D., New York City. During 1976, Edward wrote checks on the joint checking account he had with Mary Margaret at Citibank, N.A., to Murray D. List, Ph.D., Ava L. Siegler, Ph.D., Tommy Owens, D.D.S., Nathan Mandelman, M.D., Milton I. Levine, M.D., and the Internal Medicine Group in the total amount of $ 3,602.25. During that *431 same year, Mary Margaret issued checks on the joint checking account to Nina D. Fieldsteel, Ph.D., Burton Benson, M.D., Charles Bauer, M.D., Milton Levine, M.D., Ava L. Siegler, Ph.D., and the Internal Medicine Group in the total amount of $ 3,753.50. During 1977, Edward wrote checks on the joint checking account at Citibank, N.A., to Murray D. List, Ph.D., Ava L. Siegler, Ph.D., Nathan Mandelman, M.D., Milton I. Levine, M.D., David Sliverman, M.D., Wallace and Owens, D.D.S., Dianetics Medical Lab, and the Internal Medicine Group in the total amount of $4,913. During that same year, Mary Margaret also issued checks on the joint checking account to Nina D. Fieldsteel, Ph.D., Nathan Mandelman, M.D., Ava L. Siegler, Ph.D., Milton I. Levine, M.D., T. Sterline Clairborne, M.D., David Sherman, M.D., Rolander and Sheffield, P.A., Dianetics Medical Lab, and Madison Medical Laboratories in the total amount of $ 2,896. Pteitioner and Edward estimated that Edward and his family spent approximately $ 32,000 for living expenses in 1977. This figure included expenditures for medical and dental care; Federal, state, and local taxes; one-half of the estate taxes due from the estate of Mr. *432 Ragsdale; brokerage expenses; and one-half of the legal fees charged petitioner and Edward by their attorney. During the calendar year 1976, petitioner issued checks on account number 0610-0005-395-43-368 at the Citizens and Southern National Bank, Atlanta, Georgia, to or for the benefit of Edward, Mary Margaret, Melanie and Jennifer Ragsdale in the total amount of $ 907.44. These checks were for such items as birthday gifts, an intangible tax owed by Edward, and $ 700 paid to Edward so that he could return home to Atlanta due to the illness of his father. During the calendar year 1977, petitioner issued checks on her checking accounts to or for the benefit of Edward, Mary Margaret, Melanie and Jennifer Ragsdale in the total amount of $ 10,542.20. The checks issued to or for the benefit of Edward and his family included payment for such item as $ 724.35 paid to the Internal Revenue Service on behalf of Edward, $ 1,195 paid for braces for Melanie, Edward's one-half share of the estate taxes due on the estate of Mr. Ragsdale in the amount of $ 4,171.55, fees for legal and tax advice paid to the family attorney in the amount of $ 1,214.50, and a check in the amount of $ 2,740.34 *433 made out to Edward, although there was no indication on the check showing the purpose of the payment. On Their Federal income tax return for 1976, petitioner and Mr. Ragsdale claimed four dependency exemptions for Edward, Mary Margaret, Melanie and Jennifer Ragsdale who were 28, 27, 10, and 6-years-old, respectively. Under "Medical and Dental Expenses" they claimed $ 150 of insurance premiums for medical care plus the balance of insurance premiums of $ 616.46; $ 9,341.35 for doctors, dentists, nurses, etc.; and $ 424.76 for medical bed repair. Petitioner, on her individual Federal income tax return for the year 1977, claimed the filing status of a qualifying widow with dependent child. She also claimed four dependency exemptions and listed Edward and Mary Margaret as dependent children who lived with her but listed Melanie and Jennifer Ragsdale as other dependents which did not live in her home. Under "Medical and Dental Expenses," petitioner claimed $ 150 of insurance premiums for medical care and $ 262.99 as the balance of insurance premiums; $ 9,277.95 as expenses for doctors, dentists, nurses, etc.; and $ 206 for transportation. In his deficiency notice for the calendar *434 year 1976, respondent disallowed the four claimed exemptions because it was not established that petitioner and Mr. Ragsdale furnished more than 50 percent of the total support of her son, daughter-in-law, and two grandchildren. With reference to the itemized deductions for medical and dental expenses, respondent determined that-- The amount of $ 7,879.17 claimed as an itemized deduction for medical and dental expenses is not allowed as itemized below because it has not been established that you paid any amount within the meaning of section 213 of the Internal Revenue Code in excess of the 1% and 3% limitations. Accordingly, your taxable income is increased $ 7,879.17. With respect to the calendar year 1977, respondent disallowed the four dependency exemptions claimed by petitioner for her son, daughter-in-law, and two grandchildren because it was not established that petitioner furnished more than 50 percent of the total support of these persons. Of the total amount of $ 8,268.26 claimed as an itemized deduction for medical and dental expenses, respondent allowed only the $ 412.99 paid for medical insurance and explained that the balance was not allowed *435 "because it has not been established that you paid any amount within the meaning of section 213 of the Internal Revenue Code in excess of the 1% and 3% limitations." Respondent also disallowed $ 66.03 of the $ 3,562.03 claimed by petitioner on her return as "Miscellaneous Deductions--Other - publications" because it had not been established that this amount was paid during the taxable year for the purposes designated. OPINION The first issue presented is whether petitioner is entitled to a deduction for the dependency exemptions claimed on her return for the calendar years 1976 and 1977 for her son, daughter-in-law, and their two children. Section 151(e) provides that a taxpayer is entitled to a dependency exemption for each dependent (as defined in section 152) whose gross income in the calendar year of the taxpayer is less than $ 750 or who is a child for the taxpayer who (1) has not attained the age of 19 at the close of the taxable year or (2) is a student regardless of age. [3] Section 152(a) defines the term "dependent" to include a son or daughter of the taxpayer or one of their descendants or daughter-in-law "over half of whose support, for the calendar *436 year in which the taxable year of the taxpayer begins, was received from the taxpayer." Section 152(b)(2) also provides that a legally adopted child of an individual shall be treated as a child of such individual by blood. As stated in Turecamo v. Commissioner, 554 F.2d 564, 569 (2d Cir. 1977), affg. 64 T.C. 720 (1975)-- In order to prove the dependency status claimed under section 152(a) and to take advantage of the consequent tax benefits under sections 151(e) and 213 of the *437 Code, the taxpayer must first establish the total support costs expended on behalf of the claimed dependent from all sources and then demonstrate that over half of this amount was provided by the taxpayer. See, e.g., Hogg v. U.S., 428 F.2d 274, 283 (6th Cir. 1970), cert. denied, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); Kofta v. U.S., 333 F.Supp. 781 (N.D. Ohio 1970); Hopkins v. Commissioner, 55 T.C. 538, 541 (1970). * * * Although the term "support" is not defined in the Code, section 1.152-1(a)(2)(i), Income Tax Regs., states that it includes "food, shelter, clothing, medical and dental care, education, and the like." See Turecamo v. Commissioner, supra; Seraydar v. Commissioner, 50 T.C. 756, 761 (1968). Although petitioner's daughter-in-law, Mary Margaret, is an individual included within the term "dependent" in section 152(a), petitioner is not entitled to claim a dependency exemption for her in any year in which her income is $ 750 or more since she is not a child of petitioner within the meaning of section 151(e)(1)(B). Section 151(e)(3) defines a "child" as an individual who is a son or daughter of the taxpayer. On her return for the calendar year 1976, Mary Margaret reported total income of $ 1,040.23 and there was no evidence presented as to her total income in 1977. Accordingly, because Mary Margaret's income exceeded $ 750 in 1976 and the taxpayer failed to establish that her income did not exceed that amount for the calendar year 1977, we conclude that petitioner is not entitled to an exemption in 1976 or 1977 for her daughter-in-law. Petitioner's son, Edward, was a student during the years in issue and we assume that, and there was no evidence to the contrary, her granddaughters, Melanie and Jennifer Ragsdale, had income of less than $ 750 during those years. Therefore, petitioner would be entitled to a dependency exemption for each of these three individuals if she established that she provided over half of their support. [4] For the calendar year 1976, petitioner introduced no evidence of the total amount spent for support of Edward and his family. A review of the checks written by petitioner in that year shows that she issued checks to or for the benefit of Edward and his family in the total amount of $ 907.44. Because *438 petitioner has the burden of proving that she provided over half of the support of her claimed dependents, and because we believe, and the testimony so indicates, that Edward and his family spent well in excess of $ 1,800 for their support while they were living in New York City, we conclude that petitioner is not entitled to a dependency exemption for her son and two grandchildren for the calendar year 1976. Welch v. Helvering, 290 U.S. 111 (1933). Petitioner and Edward estimated that he and his family spent approximately $ 32,000 for living expenses in 1977, which figure included expenditures for Federal, state, and local taxes, estate taxes due from the estate of Mr. Ragsdale, brokerage *439 expenses, and one-half of the legal fees charged the family by their attorney. A review of the checks issued by petitioner during 1977 shows that she issued checks to or for the benefit of Edward and his family in the total amount of $ 10,542.20. Even if we were to accept, which we do not, that all of the items which make up the $ 10,542.20 paid by petitioner in 1977 for the benefit of Edward and his family qualified as "support," it is clear that petitioner did not provide over half of their support. See Shapiro v. Commissioner, 54 T.C. 347, 348-350 (1970); Vance v. Commissioner, 36 T.C. 547, 550 (1961). We recognize that the estimate by petitioner and Edward of the living expenses of Edward and his family for 1977 included payments for taxes and legal fees and that exclusion of these amounts would lower the amount of total support required by Edward and his family for that year. However, of the total amount paid to or for the benefit of Edward and his family by petitioner, over $ 5,300 was paid for taxes and legal fees. Exclusion of this amount from the "support" of Edward and his family would in turn reduce the total amount petitioner contributed *440 to them for their support. Accordingly, we hold that petitioner has failed to show that she is entitled to dependency exemptions for her son and two grandchildren for the year 1977. At trial, it was apparent from petitioner's testimony that she felt that she was supporting Edward and his family while her son and daughter-in-law attended school in New York City. In addition to the checks written on her account to or for the benefit of them, it was petitioner's belief that she had also contributed to their support through the release of stock from her husband's account to Edward. However, petitioner did not specifically identify the stock transactions in the monthly summaries of her and her husband's account at Merrill Lynch to support her contention. Furthermore, Edward was entitled to half of his father's estate under the intestacy laws of Georgia and it is quite apparent that whatever transfers did in fact take place were in division of the estate of Mr. Ragsdale. Only support actually received from the taxpayer in the year for which the dependency exemption is claimed may be considered in determining whether the taxpayer provided over half of a claimed dependent's support. *441 See Gulvin v. Commissioner, 644 F.2d 2 (5th Cir. 1981), affirming a Memorandum Opinion of this Court; McKay v. Commissioner, 34 T.C. 1080, 1083 (1960). Any part of the support of Edward and his family which came from property inherited by Edward from his father is not support furnished by petitioner. The second issue is whether petitioner is entitled to a medical expense deduction under section 213 for expenditures paid by her and by her son and his wife in 1976 and 1977 and, if so, in what amounts. Section 213(a) allows a deduction for expenses paid for medical care of the taxpayer, his spouse, and dependents (as defined in section 152) to the extent such expenses exceed 3 percent of the taxpayer's adjusted gross income and a deduction for one-half (but not more than $ 150) of insurance premiums for medical care which deduction is not subject to any percentage limitations. [5]Section 213(e)(1)(A) defines the term "medical care" to mean the amounts paid "for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body." See section 1.213-1(e)(1), Income Tax Regs. *442 On her joint return for calendar year 1976, petitioner claimed a deduction for medical and dental expenses in the amount of $ 10,382.57, not including the $ 150 claimed for insurance premiums for medical care. At trial, petitioner submitted checks written for nurses, sitters, and ambulances in connection with the last illness of Mr. Ragsdale in the total amount of $ 5,628.76. The first question to be resolved is whether petitioner is entitled to deduct any amount in excess of $ 5,628.76. Petitioner argues that this excess represents the *443 amount paid by her son and daughter-in-law for psychotherapy and other medical care. Although section 213(a) does allow a deduction for expenses paid for medical care of a dependent, as defined in section 152, we hold for respondent for two reasons. First, we have held above that petitioner's son, daughter-in-law, and two grandchildren did not qualify as her dependents in the calendar years 1976 and 1977. Second, petitioner provided no evidence that she personally paid these expenses on behalf of her son. It was clear from the personal checks written by her son and daughter-in-law on their New York City bank account that they had, in fact, paid those expenses with their own funds. With respect to the expenses of $ 5,628.76 incurred in connection with Mr. Ragsdale's final illness which lasted four months, we conclude that these expenses were incurred for services in the nature of medical care. See section 1.213-1(e)(1)(ii), Income Tax Regs.; Fischer v. Commissioner, 50 T.C. 164, 174 (1968). We also accept petitioner's testimony that she was not reimbursed by insurance for these expenses. However, on the estate tax return for the estate of Mr. Ragsdale, medical *444 expenses were claimed as a debt of the estate in the amount of $ 2,208.30. There is nothing in the record to indicate that the $ 2,208.30 was not a part of the $ 5,628.76 of expenses covered by checks in the record. Therefore, petitioner's medical deduction must be reduced by this $ 2,208.30. See section 213(d). This leaves net medical expenses of petitioner and Mr. Ragsdale for 1976 of $ 3,420.46. After reduction for the 3 percent limitation of $ 2,653.40, petitioner's deduction for medical expenses other than insurance in 1976 is $ 767.06. Petitioner claimed a deduction for premiums for medical insurance for herself and Mr. Ragsdale in 1976 in the total amount of $ 766.46. The only evidence introduced to support this deduction was canceled checks written on the account of Mr. Ragsdale. Upon review of these checks, we could find only three checks in the amount of $ 3.50 each to Iowa State Travelers and three checks in the amount of $ 12 each to the Illinois Traveling Men's Health Association which appeared to be in payment of insurance. Although the only indication we have as to whether these payments were for insurance premiums for medical care is the name that appears *445 on the checks, we have concluded that the $ 36 paid to the Illinois Traveling Men's Health Association was for medical insurance. Therefore, petitioner's medical deduction should be increased for such amount, which results in a total deduction of $ 803.06 for the calendar year 1976. On her return for the calendar year 1977, petitioner claimed a deduction for medical and dental expenses of $ 9,746.94, exclusive of the $ 150 claimed for insurance premiums. For the year 1977 respondent did not disallow the claimed deduction of $ 150 for medical insurance. At trial, petitioner introduced checks written on her checking accounts for medical expenses for herself and those incurred in connection with the last illness of Mr. Ragsdale in the amount of $ 160. Petitioner argued that she was entitled to the amount claimed on her 1977 return, which was far in excess of $ 160, because of the medical expenses paid by her son and daughter-in-law. As we concluded above with respect to the calendar year 1976, petitioner is not entitled to a deduction for the medical expenses paid by her son and daughter-in-law because they did not qualify as her dependents under section 152 and she did not, in fact, *446 pay those expenses on behalf of them. As petitioner has introduced no other evidence to support her claimed medical expense deduction, we sustain respondent's determination that petitioner did not incur medical and dental expenses in excess of the 3 percent limitation for the calendar year 1977. The final issue presented is whether petitioner is entitled to a miscellaneous deduction for investment publications in the amount of $ 66.03 for the calendar year 1977. Although petitioner did submit many of her checks written in the years in issue, she did not identify any specific checks in payment for investment periodicals either at trial or on brief to substantiate the amount of the $ 66.03 claimed as a deduction. Because of this failure and our inability to find among the checks admitted into evidence any which appear to support this claimed deduction, we sustain respondent's disallowance of the $ 66.03. Because we have held that petitioner's son and his family were not dependents of petitioner, she is not entitled to a general tax credit for each of them in 1976 or to file in 1977 as a surviving spouse maintaining a household for a dependent child as defined in section 2(a). *447 Decision will be entered under Rule 155. Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue.↩
2. A decision on this issue will also dispose of the following issues: (1) the amount of the general tax credit in 1976; (2) the amount of the sales tax credit in 1977; and (3) whether petitioner Wynette A. Ragsdale is entitled to file as a surviving spouse, as defined in section 2(a), in 1977.↩
3. Sec. 151(e) reads in part as follows: (e) Additional Exemption for Dependents.-- (1) In general.--An exemption of $ 750 for each dependent (as defined in section 152)-- (A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $ 750, or (B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student. (3) Child defined.--For purposes of paragraph (1)(B), the term "child" means an individual who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the taxpayer.↩
4. The divorce decree entered between Edward and his former wife, Shelia Charles Ragsdale, granted custody of their daughter Melanie to Shelia. Although there was no evidence presented to indicate that custody had changed, the testimony at trial indicated that Melanie was living with Edward and Mary Margaret in New York City. Since respondent did not object at trial or on brief, we will assume that Edward had custody of Melanie and that she lived with him in New York City.↩
5. Sec. 213 reads in part as follows: (a) Allowance of Deduction.--There shall be allowed as a deduction the following amounts, not compensated for by insurance of otherwise-- (1) the amount by which the amount of the expenses paid during the taxable year (reduced by any amount deductible under paragraph (2)) for medical care of the taxpayer, his spouse, and dependents (as defined in section 152) exceeds 3 percent of the adjusted gross income, and (2) an amount (not in excess of $ 150) equal to one-half of the expenses paid during the taxable year for insurance which constitutes medical care for the taxpayer, his spouse, and dependents.↩