**James Steven HOGG, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 19716.**

United States Court of Appeals, Sixth Circuit.

June 24, 1970.

As Amended Aug. 14, 1970.

Stuart A. Smith, Atty., Dept. of Justice, Washington, D. C., for defendant-appellant; Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Joseph M. Howard, Harry Marselli, Attys., Dept. of Justice, Washington, D. C., on brief; George I. Cline, U. S. Atty., Lexington, Ky., of counsel.

S. Russell Smith, Louisville, Ky., for plaintiff-appellee; M. K. Gilbert, III, Louisville, Ky., on brief; Smith & Smith, Louisville, Ky., of counsel.

Before PHILLIPS, Chief Judge, EDWARDS, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

PHILLIPS, Chief Judge.

This appeal by the Government is from a judgment in favor of the taxpayer for a refund of income taxes, penalties and interest for the years 1959 through 1963, in the total amount of $32,968.34 plus statutory interest.

The judgment is based upon the verdict of the jury, which answered affirmatively the following interrogatory:

"Did Mr. Hogg report on his returns for 1959, 1960, 1961 and 1962 as much taxable income as you believe from the evidence he had for each of those years, and did he sustain a loss of $9,016.00 from his law practice and his rental and farm properties for the year 1964?"

The opinion of this Court on an earlier appeal in this proceeding is reported at 411 F.2d 578.

On the present appeal we consider two issues: (1) The motion of the taxpayer to dismiss the appeal; and (2) whether reversible error occurred during the course of the trial. We overrule the motion to dismiss the appeal and find reversible error for the reasons stated in this opinion. We reverse and remand for a new trial.

The taxpayer is a lawyer in Jackson, Breathitt County, Kentucky. He testified that during the years in question his law practice consisted exclusively of representing plaintiffs in personal injury cases which he handled on a contingent fee basis. The taxpayer was admitted to the bar in 1942 but did not devote his full time to the practice of law until 1949. Between 1936 and 1949 he owned and operated the only drugstore in Breathitt County. He sold that drugstore in 1949 for $27,000 and thereafter practiced law.

During the four years involved in this action the taxpayer's sources of income were his law practice, a one-half interest in two farms which he and his sister inherited from their mother in 1958, and a building in Jackson known as the Hogg Building in which the taxpayer lived and maintained his law office. Some offices in the Hogg Building were rented as commercial space while other space was rented to transients as sleeping rooms. During 1959 and a part of 1960 the taxpayer and his sister each owned a one-half interest in the Hogg Building, which was inherited from their father in 1918, subject to the dower interest of their mother. On June 21, 1960, the taxpayer purchased his sister's half interest in the Hogg Building

for $32,500 of which $10,833.34 was paid at the time of sale. The balance was paid in two installments of principal in the amount of $10,833.33 each in 1961 and 1962, plus interest.

The taxpayer kept no books and records of his income other than the tax returns filed by him. He said that he could not recall who his clients were in the tax years here involved. He did not have copies of leases of any of his tenants in the Hogg Building. There was no record of any income from his farms. He maintained no receipt book reflecting any income from any source. He produced cancelled checks and receipts in support of some of the deductions claimed on his tax returns. His method of recording his income, according to his testimony, was through the use of three cigar boxes kept in a safe in his law office.

Gross receipts from his law practice were placed in the first cigar box. After he acquired his sister's interest in the Hogg Building in 1960, all receipts from tenants in this building were placed in a second cigar box which was identified easily because it bore the insignia of a different brand of cigars. At the end of the year he would count the money in each cigar box, enter at the appropriate place on his tax return the total of the amounts in the two cigar boxes, and remove the money from each box so as to start anew at the beginning of the year. He treated his tax returns as his permanent record of gross receipts. If the tax return was not prepared immediately after the end of the year, the taxpayer would enter this money count on a slip of paper in each of these two cigar boxes. Later, when preparing his tax return, he would report as gross receipts the amounts shown on these slips, then discard the slips.

The money removed after the end of the year from the first two cigar boxes was placed in a third cigar box, described by the taxpayer as his "reserve fund." All expenses were paid out of this third cigar box, either in cash, for which receipts were obtained, or by checks on

the taxpayer's bank account in the First National Bank of Jackson. From time to time cash was taken from the "reserve fund" cigar box and deposited in the bank account to cover checks written for expenses, such as stenographic help, telephone, non-reimbursed court costs and the like.

The taxpayer made the first two payments for his sister's interest in the Hogg Building out of the cash in his "reserve fund" cigar box. The funds for the third payment were obtained by a loan from the First National Bank of Jackson. This loan was not repaid before the end of 1962.

Expenses such as travel and entertainment were paid in cash. The taxpayer computed his travel expense deductions by using the figure of 20¢ per mile to include food, lodging and the cost of upkeep on his automobile. He determined his business mileage by reading the speedometer at the beginning and end of each year, claiming that he used his car for nothing except business purposes.

The taxpayer reported no profit from either the Hogg Building or the two farms because, in his view, there was no profit to report.

During the period when the taxpayer owned the Hogg Building and farm properties jointly with his sister, the income from these properties was deposited in a joint bank account known as the "special account." From these deposits the taxpayer and his sister would pay by check such bills as were chargeable against these properties. This special bank account was closed after the taxpayer purchased his sister's interest in the Hogg Building in June 1960. Thereafter the gross receipts from rentals derived from this building were placed in the second cigar box in the manner described above.

A divorce had terminated his only marriage. At the time of the trial his ex-wife had remarried. The two children of the taxpayer were in the custody of their mother. As of 1959 his son

was in high school and his daughter in grade school. During the years at issue the taxpayer paid $100 per month in child support, totaling $600 per year for each child. He did not pay any other expenses incident to his children. During the years at issue both the taxpayer and his ex-wife claimed the two children as dependents on their separate income tax returns.

In May 1962 the taxpayer was contacted by a revenue agent. The agent requested certain records which the Government says were not furnished. During the course of the investigation by the agent the taxpayer signed a Form 870, agreeing to extend the statute of limitations for the taxable year 1959 until December 31, 1963. The taxpayer failed or refused to sign a second Form 870 further extending the statute of limitations. Relations between the agent and taxpayer began amicably but soon deteriorated. The agent testified that the lack of cooperation on the part of the taxpayer was a significant factor in the decision to assess the penalty for civil fraud.

Deficiency assessments were made for each of the years 1959 through 1962. In reconstructing taxable income from 1959, the bank deposits method of recomputing gross receipts was used, coupled with disallowance of specific deductions. The deficiency assessed for 1959 totaled $5,053.87. For the years 1960–62, the net worth expenditures method of reconstructing income was used. Deficiency assessments for these years were as follows: $7,157.84 for 1960, $5,973.71 for 1961 and $10,452.12 for 1962.

In its brief on the present appeal the Government concedes that the revenue agent made certain mistakes in his report and that the deficiency assessments are erroneous to the extent that they reflect these mistakes. These mistakes were: (1) the inclusion of a bank deposit of $1,012.50 arising from an inheritance as income for 1959; (2) the inclusion as the taxpayer's income of 100 per cent rather than 50 per cent of the deposits

in the "special" joint bank account of the taxpayer and his sister, the Government now conceding that the taxpayer had only a one-half interest in this account; and (3) the omission of the amount of $13,500 as an outstanding liability as of the end of the year 1962. This liability figure is stated to represent two separate bank loans in the amounts of $10,000 and $3,500 which the taxpayer obtained from the First National Bank of Jackson on July 6, 1962. The Government says the latter mistake was due to the fact that the entries on the bank ledger sheet were in the wrong column.

After a trial extending over a period of eight days the jury returned its verdict in favor of the taxpayer and judgment was entered against the Government.

### 1) The motion to dismiss

Before reaching the issues presented by the appeal on its merits we dispose of the taxpayer's motion to dismiss the appeal. This motion is grounded on the contention that the Government's timely notice of appeal filed January 8, 1968, is fatally defective because it was filed by the United States Attorney at a time when the Solicitor General had not authorized the appeal. The District Judge struck the Government's notice of appeal and ordered it expunged from the record on the ground that at the time of its filing the Solicitor General had not authorized the appeal. In the opinion reported at 411 F.2d 578 this Court held that the District Court acted beyond its jurisdiction in striking the notice of appeal. The order of the District Court was vacated and the notice of appeal was reinstated. The clerk of the District Court was directed to prepare and transmit to this Court the record in the case.

In our former opinion this Court expressly reserved determination of the issue now presented by the taxpayer's motion to dismiss the appeal. A recitation of the various proceedings in the District Court is set forth at 411 F.2d 578 and will not be repeated here. Suffice it to say that the court reporter, who had a heavy backlog of work, did not

deliver the transcript to the Department of Justice until June 28, 1968. The Government contends that a decision as to whether to proceed with the appeal could not have been made until after the transcript had been received from the court reporter. Pending a definite decision as to whether to pursue the appeal, the Government contends that its right of appeal was protected by the notice of appeal filed by the United States Attorney on January 8, 1968. After the Department of Justice had received from the court reporter a copy of the transcript, a decision was made to proceed with the appeal.

The taxpayer's attack on the Government's notice of appeal is based upon the contention that certain internal procedures of the Department of Justice, which delegate to the Solicitor General the duty of authorizing appeals to courts of appeals, had not been complied with at the time the notice of appeal was filed. Specifically the taxpayer relies upon 28 C.F.R. § 0.20.[1] It is argued by the taxpayer that one of the main purposes of the 1946 amendment to Rule 73 (a), Fed.R.Civ.P., was to give the Solicitor General sixty days in which to authorize an appeal before the filing of the notice of appeal.

We reject the contention that the regulation defining the jurisdiction of the Solicitor General forecloses the Attorney General from directing that a notice of appeal be filed by a United States Attorney. The Attorney General has plenary power over the conduct of litigation to which the United States is a party.[2] Continuously since the creation of the Department of Justice the Attorney General has exercised this power through his supervision over the various officers of the Department of Justice and the United States Attorneys and their assistants.[3]

In the present case the authority of the United States Attorney to file the notice of appeal came from two specific sources:

(1) The Tax Division of the Department of Justice directed that the notice

1. 28 C.F.R., states with respect to the Solicitor General, as follows:
§ 0.20 *General functions.*
Subject to the general supervision and direction of the Attorney General, the following-described matters are assigned to, and shall be conducted, handled, or supervised by, the Solicitor General, in consultation with each agency or official concerned:
(a) Conducting, or assigning and supervising, all Supreme Court cases, including appeals, petitions for and in opposition to certiorari, briefs and arguments, and, in accordance with § 0.163, settlement thereof.
(b) Authorizing or declining to authorize appeals by the Government to all appellate courts, including petitions for rehearing *en banc.*
(c) Authorizing the filing of all briefs *amicus curiae* by the Government in all appellate courts.
(d) Surveying and listing appellate cases in the courts of appeals in which the Government is participating.

2. 28 U.S.C. § 516. *Conduct of litigation reserved to Department of Justice*
Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.
28 U.S.C. § 519. *Supervision of litigation*
Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.
This codification in §§ 516 and 519 constitutes a mere restatement of long existing law and no substantive changes in prior law were intended. H.Rep.No. 901, 89th Cong. 1st Sess. pp. 1–4, 186–187; S.Rep.No.1380, 89th Cong., 2nd Sess. pp. 18–21, 205, 206.

3. See Revised Statutes, Sec. 346 et seq. (5 U.S.C.1940 ed., Sec. 291, et seq.) Executive Order No. 6166, June 10, 1933, Sec. 5 (5 U.S.C. (1958 ed.), pp. 139, 141); Act of June 22, 1870, c. 150, 16 Stat. 162, and Act of September 24, 1789, c. 20, 1 Stat. 73.

of appeal be filed by the United States Attorney. The affidavit of David A. Wilson, Jr. an attorney in the Tax Division, is quoted in the footnote.[4]

(2) The internal instructions of the Department of Justice, as set forth in Attorney General's order No. 207–60, provide that the United States Attorney shall file a notice of appeal if the time for appeal is about to expire and he has not received notice from the appropriate division of the Department of Justice as to whether an appeal should be taken. This order is quoted in the footnote.[5]

4. AFFIDAVIT OF DAVID A. WILSON, JR.
CITY OF WASHINGTON ⎫ ss.
DISTRICT OF COLUMBIA ⎰

David A. Wilson, Jr., of the City of Washington, District of Columbia, having been duly sworn, upon oath states as follows:

(1) That he is an attorney employed in the Tax Division, Department of Justice, Washington, D. C., and for the last several years has been assigned to duty as Chief of a section in the Tax Division, and that in that capacity he has, amongst other things, the duty, responsibility, and authority to supervise the conduct on behalf of the Government of suits for the refund of Internal Revenue taxes instituted against the United States, or any officer or agency thereof, in a number of judicial districts of the United States, including the United States District Court for the Eastern District of Kentucky (at Jackson);

(2) That, in his official capacity, the affiant has, upon delegation from the Attorney General through the Assistant Attorney General in charge of the Tax Division of the Department of Justice, the responsibility and authority, amongst other things, to supervise and direct the conduct of all litigation in which the refund is sought of Internal Revenue taxes in this Court, including the specific responsibility and authority to direct the filing of any pleading therein deemed appropriate, including the filing or causing to be filed of a notice of appeal on behalf of the United States from any judgment or order adverse to the United States;

(3) That, in his official capacity and in the exercise of his responsibility and authority, the affiant caused or directed the filing (through the United States Attorney, and an Assistant United States Attorney, both counsel of record in this case in this Court) of a notice of appeal on behalf of the United States in this case, and that he did so in good faith and upon the honest belief and firm opinion that good cause and good grounds existed for an appeal in this case and that the filing of a notice of appeal in this case was fully warranted and entirely proper, and that he did so cause or direct the filing of the notice of appeal in this case for the above-mentioned reasons and not for the purpose of delay or vexation or for any purpose inconsistent with Rule 11 or Rule 73(a) of the Federal Rules of Civil Procedure;

(4) That the affiant did cause or direct the filing of a notice of appeal on behalf of the United States in this case, as aforestated, notwithstanding the fact, of which he was fully aware, that, because of the continued inability of the United States to obtain a copy of the transcript of the trial proceedings in this case from the Court's Reporter, this case had not yet been submitted to the Solicitor General for his consideration and his decision as to whether an appeal in this case should be taken or prosecuted, and that his doing so under the circumstances was fully consistent and in keeping with a long-standing practice, followed for many years in the Department of Justice.

Dated at Washington, D. C., this 1st day of March, 1968

[Signature and verification omitted]

5. 13. Attorney General's Order No. 207–60, July 18, 1960:
REGULATIONS GOVERNING APPELLATE PROCEEDINGS

By virtue of the authority vested in me by section 161 of the Revised Statutes (5 U.S.C. 22) and section 2 of Reorganization Plan No. 2 of 1950 (64 Stat. 1261), I hereby prescribe the following regulations governing appellate proceedings in Federal and State courts in which the United States is interested.

APPEALS FROM DISTRICT COURTS TO COURTS OF APPEALS

\* \* \* \* \*

Sec. 6. *Protective notice of appeal.*

(a) If the time for appeal is about to expire and the United States Attorney has not received notice from the appropriate division of the Department as to whether an appeal is to be taken, a notice of appeal—commonly called a "protective" notice of appeal—should be filed in order to preserve the Government's right to appeal, and such action should be reported to the appropriate division of the Department. In order that the Department may

The authority for such filing runs directly · from the Attorney General to the United States Attorney, independently of the duties of the Solicitor General.

28 U.S.C. § 510 provides that the Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee or agency of the Department of Justice of any function of the Attorney General.

■ The taxpayer asserts that § 6 of Attorney General's order No. 207–60 (n. 5) is ineffective because it has not been published in the Federal Register as required by the Administrative Procedure Act, 5 U.S.C. § 552, and is in conflict with the published regulation in 28 C.F.R. § 0.20 (n. 1, *supra*). We hold that the Administrative Procedure Act does not require that all internal delegations of authority from the Attorney General must be published in order to be effective. Under the provisions of 5 U.S.C. § 552, the requirement for publication attaches only to matters which if not published would adversely affect a member of the public. See S.Rep.No. 813, 89th Cong., 1st Sess., p. 6, H.Rep. No. 1497, 89th Cong., 2d Sess., p. 7, 2 U.S.Code Cong. & Ad.News, pp. 2418, 2424. We fail to see how a taxpayer in the posture of the taxpayer in the present case could be affected adversely by the nonpublication of internal instructions by · the Attorney General to officers of the Department of Justice, including United States Attorneys, as to their functions in the conduct of litigation to which the United States is a party. Any delay incident to the ultimate payment of the judgment in favor of a taxpayer which might result from the dismissal of an appeal or from an affirmance would be compensated for by the payment of interest at the rate of six percent per annum. 28 U.S.C. § 2411(a).

We find nothing in 28 C.F.R. § 0.20 (b) (n. 1, *supra*) which requires the Solicitor General to have authorized the prosecution of an appeal before the filing of the notice of appeal. Neither the federal rules nor the provisions of 28 C.F.R. §§ 0.20 and 0.70 specify when the Solicitor General must render a decision with respect to prosecuting an appeal on behalf of the United States. Rule 73(a), Fed.R.Civ.P. (now Rule 4, Fed.R.App.P.) requires only that a notice of appeal in a case in which the United States is a party must be filed within 60 days after the entry of judgment. The running of the 60-day period is suspended by a motion for a new trial, which the Government made in this case. By filing its notice of appeal on January 8, 1968, the United States complied with the rule. In the absence of any demonstrable injury, the taxpayer has no more right to question the process by which a decision was made to file the Government's notice of appeal than the United States could question the procedure by which a private practitioner and his client reach a decision to file a notice of appeal.

The question presented by the motion to dismiss the appeal was decided by this Court in an unpublished order on a motion to dismiss a petition to review the decision of the Tax Court of the United States in Commissioner of Internal Revenue v. Estate of Leyman, 344 F.2d 763, cert. granted and vacated and remanded upon consent, 383 U.S. 832, 86 S.Ct. 1236, 16 L.Ed.2d 297. Prior to the time this Court heard arguments in that case on its merits, the taxpayer filed a motion to dismiss the petition for review on the ground that it had not been authorized by the Solicitor General. On December 19, 1963, a panel of this Court composed of Judges Shackelford Miller, Jr., Cecil and Phillips entered an order denying the motion to dismiss, saying:

"Respondent has filed an additional motion to dismiss the petition for review on the ground that the appeal is 'a sham and frivolous' because it was taken by counsel for petitioner with-

---

have adequate time to consider the case, such notice of appeal should not be filed

sooner than five days before the time for appeal expires.

out 'belief there is good ground to support it' and because it was 'interposed for delay' with intent to defeat the purpose of Rule 11 of the Federal Rules of Civil Procedure. It is charged that the petition for review was filed for protective purposes to toll the appeal time pending a final recommendation to the Solicitor General by the Tax Division of the Department of Justice as to whether the petition for review shall be prosecuted further by the Government. The petitioner opposes this additional motion to dismiss, stating that the petition for review was filed on behalf of the Commissioner of Internal Revenue pursuant to general authority from the Solicitor General and pursuant to specific authority delegated by the Acting Chief Counsel for the Internal Revenue Service. The petitioner's Memorandum in Opposition to the Motion to Dismiss is supported by the affidavit of the attorney under whose direction the petition was prepared, stating unequivocally that the petition was filed in good faith on the firm belief that the decision of the Tax Court was erroneous, and not for purpose of delay or vexation.

"Upon consideration the Court is of the opinion that both of said motions to dismiss are without merit and should be denied.

"It is therefore ORDERED that both of said motions be and the same hereby are denied."

The taxpayer undertakes to distinguish this Court's ruling in *Leyman* because it involved a petition to review a decision of the Tax Court, with respect to which 28 C.F.R. § 0.70 sets forth the general functions of the Assistant Attorney General in charge of the Tax Division of the Department of Justice, whereas the present case involves an appeal. from the District Court controlled by C.F.R. § 0.20 (n. 1, *supra*). We do not find this distinction to be of significance. In *Leyman* the petition for review was filed by the Acting Chief Counsel for the Internal Revenue Service for protective purposes before a final recommendation had been made by the Tax Division to the Solicitor General and before the Solicitor General had decided to prosecute the appeal. In the present case the notice of appeal was filed by the District Attorney for protective purposes, at a time when the court reporter had not completed the transcript.

The motion to dismiss the appeal is overruled.

### 2) The appeal on the merits

The Government contends that a number of reversible errors occurred during the course of the trial. The chief basis of attack is that certain instructions given by Court were inadequate or inaccurate. We deal first with the instructions concerning the duty of the taxpayer to maintain records which reflect his income and deductions.

During the trial the Government relied to a great extent for proof on the inadequacy of the taxpayer's records. The Government asserts on appeal that the instructions given by the District Court in regard to the taxpayer's statutory duty to keep records were so inadequate as to constitute reversible error. It is contended that these instructions were insufficient to apprise the jury of the duty imposed by statute on taxpayers to keep records that will adequately reflect income and deductions. We agree.

The Government requested an instruction concerning the taxpayer's lack of records in regard to the Government's allegation that the taxpayer had negligently filed his return for 1959 so as to be liable for the five per cent negligence penalty. The Government requested the following instruction in regard to the year 1959:

"If the plaintiff underpaid his income taxes for the year 1959, and any portion of that underpayment was a result of his negligence or intentional disregard of the rules and regulations of the Internal Revenue Code, then Members of the Jury, he is not entitled to a refund of the 5% negligence penalty which was imposed on him for

that year. The Internal Revenue Code and the Regulations require all taxpayers to keep adequate books and records. Mr. Hogg was obligated by law to meet these minimum bookkeeping requirements. There is no particular form of records which he was required to keep, except that such forms and records had to enable an Internal Revenue Agent to ascertain whether a tax liability had been incurred, and, if so, the amount of the tax.

"Finally, with respect to this issue, the plaintiff bears the burden of proving that the assertion of a negligence penalty was erroneous. In other words, *plaintiff must prove by the preponderance of evidence that he satisfied the bookkeeping requirements of the Internal Revenue Code and Regulations.*" (Emphasis added.)

The taxpayer argues that the instruction given was the one requested by the Government. We disagree. While the instruction given is verbatim of the one requested through the first paragraph, the District Court deviated therefrom in such a manner as to constitute reversible error. The burden of proof on the issue was on the taxpayer and the jury should have been so informed. The instruction given by the Court was:

"If the plaintiff underpaid his income taxes for the year 1959, and any portion of that underpayment was a result of his negligence or intentional disregard of the rules and regulations of the Internal Revenue Code, then he is not entitled to a refund of the 5% negligence penalty which was imposed on him for that year. The Internal Revenue Code and the Regulations require all taxpayers to keep adequate books and records. Mr. Hogg was obligated by law to meet these minimum bookkeeping requirements. There is no particular form of records which he was required to keep, except that such forms and records had to enable an Internal Revenue Agent to ascertain whether a tax liability had been incurred and, if so, the amount of the tax.

"Negligence is the failure to use ordinary care. Ordinary care is that care which reasonably prudent persons exercise in the management of their own affairs."

The Government further requested instructions in regard to the taxpayer's lack of records in regard to the assessment of the 50 per cent penalty for civil fraud for the years 1960–62. The Court did not give an instruction in this matter at all.

We hold that the Government was entitled to an instruction in regard to each of the years in question that would adequately explain to the jury that the taxpayer has the burden of proving that he complied with the statutory duty to keep adequate records. Such instructions should explain that while no certain method of keeping records is required, they must be sufficient to " * * * establish the amount of gross income, deductions, credits or other matters required to be shown by such person in any return or information." Treas.Reg. § 1–6001–1 (1960) and § 6001 Internal Revenue Code (1954). Failure to give such instructions, in our opinion, was reversible error. In the case of Halle v. Commissioner of Internal Revenue, 175 F.2d 500 (2d Cir.), involving a New York City attorney who failed to keep records, the Court said:

"The federal income tax system is one of self-assessment by the taxpayer. Its efficiency must depend largely on the truth of facts set out by the taxpayer in his return. And, appropriately geared to the gravity of nondisclosure (or false disclosure), Congress has provided varied sanctions, both civil and criminal, to protect that system. Implicit in the working of the system is an obvious duty of keeping proper records imposed on the taxpayer. Nor must the fact be overlooked that the taxpayer here was no unlettered person, ignorant of the methods of business and the purlieus of the law, but, on the contrary, he was a successful lawyer, practicing under the keen competition that obtains in the largest

city on this continent." 175 F.2d at 502.

The taxpayer here does not practice in a large metropolitan area, but as a licensed and practicing attorney of the Kentucky bar he is sufficiently aware of the law and of business practices to know that certain types of records should be maintained in any business or profession, including his law office. As a lawyer he is chargeable with the knowledge that the income tax law requires him to keep records. If ignorance of those provisions of the tax laws requiring records is no excuse for the unlettered, Harris v. Commissioner of Internal Revenue, 174 F.2d 70 (4th Cir.), then assuredly it is not an excuse for the failure of an attorney to keep records accurately reflecting his income. The Government was entitled to an instruction properly setting forth this duty. We hold that the failure of the District Court to give adequate and specific instructions to that effect constituted reversible error.

Since the case must be reversed and remanded we proceed to pass on two other questions for the guidance of the District Court on the new trial.

█ The taxpayer paid $600 each year to his ex-wife for the support of each of his two children. The evidence establishes that this was not more than one-half of the total amount expended for their support, including private schools, music lessons, summer camps and other expenses. Although the District Court recognized that to be entitled to a dependency exemption the taxpayer must provide more than one-half of the *total* support, the following instruction was given:

"The income tax laws permit a taxpayer to claim a dependency exemption for a child only if that taxpayer furnishes over one-half of the total amount spent for the support of that child. 'Support' means the amount required to provide a child with *reasonable* necessaries, including food, clothing, lodging, an education, medical and dental care, entertainment and the like, compatible with that child's status, station in life surroundings and the environment in which he or she is required to, or does live. You should allow Mr. Hogg a dependency exemption of $600.00 for each child of him [sic] as to whom you believe from the evidence he furnished more than one-half the support during 1959." (Emphasis added.)

A similar instruction was given for each taxable year in question.

This instruction was erroneous. Tressler v. Commissioner of Internal Revenue, 206 F.2d 538 (4th Cir.). The taxpayer is obligated to prove both the total amount expended for each child and that the amount provided by the taxpayer is more than one-half of this amount. The taxpayer here did not attempt to prove the total amount expended on each child, but rather relied on his personal estimate of what he thought it ought to cost "reasonably" to support the children. The Government, on this issue, presented evidence sufficient to prove that the amounts expended by taxpayer were less than one-half of the total support expended for each child. While the Government did not attempt to prove all expenditures made for the children, it did prove sufficient expenditures to rebut the taxpayer's contentions in this regard. We hold the above-quoted instruction to be inadequate.

█ Taxpayer dated a check December 20, 1958, which according to his testimony was mailed in January 1959, as payment for law books. The check cleared the bank on January 13, 1959. Taxpayer claimed the expense as a deduction for 1959. The Court instructed the jury that the expense occurred in 1959. The Government alleges that this is error. The Government correctly contends that if a check is honored payment made thereby relates back to the time of delivery. This proposition is irrelevant under the proof adduced by the taxpayer and unassailed by the Government. The Government seems to argue that the check was delivered in 1958, but the rec-

ord is devoid of any evidence to this effect. The evidence being uncontradicted and not incredible, we hold that the District Court did not err in this instruction on this aspect of the case.

The Government presents a number of other issues which it contends to constitute a reversible error. In view of our disposition of the case, we find it unnecessary to pass upon these questions.

Because of the failure of the Court to instruct the jury properly in regard to the taxpayer's statutory duty to keep sufficient records to reflect adequately his income and deductions and his burden of proof on this aspect of the case we reverse the judgment of the District Court and remand the case for a new trial.

The motion to dismiss the appeal is overruled. The judgment is reversed and the case is remanded for a new trial.