**Guy R. NOLAN, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 98–124C.**

United States Court of Federal Claims.

May 28, 1999.

Eugene R. Fidell, Feldesman, Tucker, Leifer, Fidell & Bank, LLP, Washington D.C., attorney of record, for plaintiff. David P. Sheldon and Joseph E. Cazenavette, of counsel.

Matthew D. Lee, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C., with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, James M. Kinsella, Assistant Director, attorneys of record, for the defendant. Lt. William Kelleher, Office of Claims and Litigation, Office of the Chief Counsel, United States Coast Guard, and Alexander J. Millard, Office of General Counsel, United States Department of Transportation, of counsel.

## *OPINION*

HORN, Judge.

This case comes before the court on the defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(4) of the Rules of the United States Court of Federal Claims (RCFC), and on the plaintiff's motion for summary judgment pursuant to RCFC 56. The parties concurred at oral argument that their motions both should be treated as motions for summary judgment. In this military pay action, the plaintiff filed suit against the United States seeking "active duty pay and allowances" from March 1, 1993 to the

1. **Establishment of Coast Guard**

The Coast Guard as established January 28, 1915, shall be a military service and a branch of the armed forces of the United States at all

date of judgment, and "to restore plaintiff to active duty" in the United States Coast Guard while simultaneously "delete[ing] from plaintiff's service record all reference to his discharge." The central issue in the above-captioned case is whether the Commandant of the Coast Guard was delegated the authority at the time pertinent to plaintiff's claim to approve the plaintiff's discharge from active duty in the wake of conflicting delegations and reservations of authority.

## FACTS

Plaintiff, Guy. R. Nolan, was commissioned as a regular officer of the United States Coast Guard and entered active duty on May 25, 1977. Mr. Nolan served continuously on active duty until he was involuntarily discharged on March 1, 1993 while serving in the grade of Lieutenant Commander.

The Coast Guard is a military service and branch of the armed forces of the United States, contained within the Department of Transportation, as is stated in 14 U.S.C. § 1 (1988).[1] Pursuant to 14 U.S.C. § 326 (1988), the Secretary of Transportation may involuntarily discharge an officer of the Coast Guard from active duty if removal is recommended by a board of review. The statute specifically states:

**Removal of officer from active duty; action by Secretary**

The Secretary may remove an officer from active duty if his removal is recommended by a board of review under section 323 of this title. The Secretary's action in such a case is final and conclusive.

14 U.S.C. § 326. Section 323 governs the convening of a board of review:

**Boards of review**

(a) Boards of review shall be convened at such times as the Secretary may prescribe, to review the records of cases of officers recommended by boards of inquiry for removal.

times. The Coast Guard shall be a service in the Department of Transportation, except when operating as a service in the Navy.
14 U.S.C. § 1.

**(b)** If, after reviewing the record of the case, a board of review determines that the officer has failed to establish that he should be retained, it shall send its recommendation to the Secretary for his action.

**(c)** If, after reviewing the record of the case, a board of review determines that the officer has established that he should be retained on active duty, his case is closed. However, at any time after one year from the date of the determination in a case arising under clause (1) of section 321 of this title and at any time after the date of the determination in a case arising under clause (2) of that section, an officer may again be required to show cause for retention.

14 U.S.C. § 323 (1988).

On November 20, 1992, a board of review recommended that plaintiff "be separated from active duty" because "[t]he behavior exhibited by the respondent is considered inappropriate not only by today's standards, but contrary to personnel policies existing at the time." On December 17, 1992, the Commandant of the Coast Guard, Admiral J.W. Kime, believing that he was taking final action on plaintiff's case, stated:

> The proceedings, findings, and recommendation of the Board of Review are approved. Pursuant to the authority of Title 14, U.S.Code, Section 326, LCDR Nolan shall be separated.

Plaintiff was discharged on March 1, 1993.

Admiral Kime believed he was taking final action pursuant to a memorandum, which was signed on January 6, 1987 by Secretary of Transportation Elizabeth Hanford Dole, that the Commandant believed delegated to him the power, conferred on the Secretary by 14 U.S.C. § 326, to remove officers involuntarily from active duty. The memorandum states in its entirety:

> To: The Commandant, United States Coast Guard
>
> Subj: DELEGATION OF AUTHORITY TO THE COMMANDANT TO REMOVE AN OFFICER FROM ACTIVE DUTY

**2.** *See infra* note 5.

The Commandant of the Coast Guard is delegated the authority to remove an officer from active duty under Title 14, United States Code, Section 326.

The January 6, 1987 delegation document signed by Secretary Dole was not published in the *Federal Register* or codified in the *Code of Federal Regulations.*

At the time of the Commandant's approval of plaintiff's discharge from the Coast Guard on December 17, 1992, in fact, from April 1, 1967 until July 3, 1996 (including after the January 6, 1987 delegation [2]), the *Code of Federal Regulations,* as issued, and the Department of Transportation Organization Manual, reserved the power to remove an officer involuntarily under 14 U.S.C. § 326 to the Secretary of Transportation or a delegatee of the Secretary within the Office of the Secretary. *See* 49 C.F.R. § 1.44(m)(4) (1991); U.S. Dep't of Transportation, *Organization Manual,* at 1–49 (DOT 1100.60A, Nov. 14, 1988). The regulations issued by the Department of Transportation, without alteration, from April 1, 1967 up to July 3, 1996, stated in relevant part:

**§ 1.44 Reservation of authority.**

> The delegations of authority . . . do not extend to the following actions, authority for which is reserved to the Secretary or the Secretary's delegatee within the Office of the Secretary:
>
> \* \* \*
>
> (m) Coast Guard. The following powers relating to the Coast Guard:
>
> \* \* \*
>
> (4) Removal of an officer from active duty when recommended by a board convened under section 323 of title 14, United States Code (14 U.S.C. § 326).

49 C.F.R. § 1.44(m)(4); *see also* U.S. Dep't of Transportation, *Organization Manual,* at 1–49 (containing identical language reserving removal authority under 14 U.S.C. § 326 to the Secretary of Transportation). The parties have stipulated that the Commandant is not "within the Office of the Secretary," pur-

suant to 49 C.F.R. subpt. B, §§ 1.21–.22 (1997).

On June 21, 1996, after the date of the plaintiff's discharge, the Secretary of Transportation issued a final rule, which was subsequently published in the *Federal Register*, 61 Fed.Reg. 34,745 (July 3, 1996), addressing Secretary Dole's January 6, 1987 delegation. The preamble stated that "[t]he necessary changes to the Code of Federal Regulations were never completed" and the *Code of Federal Regulations* needed to be amended to "correctly reflect secretarial delegation of authority to the Commandant of the Coast Guard." 61 Fed.Reg. at 34,745. The 1996 final action, as published, reads in relevant part as follows:

**Organization and Delegation of Powers and Duties; Delegation to the Commandant, United States Coast Guard**

> **AGENCY:** Office of the Secretary, DOT.
> **ACTION:** Final rule.
> **SUMMARY:** The Secretary of Transportation has delegated to the Commandant, United States Coast Guard, the authority contained in 14 U.S.C. § 326 to remove an officer from active duty .... The Code of Federal Regulations does not reflect these delegations; therefore, a change is necessary.
> **EFFECTIVE DATE:** July 3, 1996.

\* \* \*

> **SUPPLEMENTARY INFORMATION:**
> ...
> Title 14, U.S.Code, sections 321, 322, and 323 provide a three-board (Determination Board, Board of Inquiry, and Board of Review) process to consider the record of a Coast Guard officer whose performance is substandard or whose record shows moral or professional dereliction. If the third board, the Board of Review, recommends separation of the officer, 14 U.S.C. § 326 requires that recommendation to be forwarded to the Secretary for final action. On January 6, 1987, then Secretary ·Elizabeth Dole delegated the Secretary's authority under 14 U.S.C. § 326 to the Commandant of the Coast Guard. The necessary changes to the Code of Federal Regulations were never completed, however, and the current CFR sections relating to delegations still show this authority reserved to the Secretary of Transportation. (See 49 CFR § 1.44(m)(4)).

> This rule removes the reservations of authority in section 1.44 and adds specific delegations of authority to 49 CFR § 1.46, thus amending the codification to correctly reflect secretarial delegations of authority to the Commandant of the Coast Guard.

> Since this amendment relates to departmental management, organization, procedure, and practice, notice and comment on it are unnecessary and it may be made effective in fewer than 30 days after publication in the Federal Register. Therefore, this final rule is effective upon publication in the Federal Register.

61 Fed.Reg. at 34,745. These changes were reflected in Part 1 of Title 49, *Code of Federal Regulations*, which was amended, in that section 1.44(m)(4) was "removed and reserved," *see* 49 C.F.R. § 1.44(m)(4) (1997), and section 1.46 was "amended by adding new paragraph[ ] ... (bbb)" to read as follows:

> **§ 1.46 Delegations to Commandant of the Coast Guard.**
> \* \* \*
> (bbb) Remove an officer from active duty under section 326, Title 14, U.S.Code.

61 Fed.Reg. 34,745; *see also* 49 C.F.R. § 1.46(bbb) (1997).

In plaintiff's case, the parties have stipulated that the Secretary of Transportation never approved the proceedings of the board of review, or the action of the Commandant of the Coast Guard, that resulted in Mr. Nolan's discharge. In addition, the parties also have stipulated that following the revision to the *Code of Federal Regulations*, the Commandant did not re-approve the proceedings of the board of review that resulted in the plaintiff's discharge from the Coast Guard.

**DISCUSSION**

The defendant filed a motion to dismiss on May 20, 1998, pursuant to RCFC 12(b)(4) for

failure to state a claim upon which relief can be granted, arguing that the Commandant had the authority on December 17, 1992 to discharge Mr. Nolan from the Coast Guard. In response, on June 1, 1998, the plaintiff filed a cross-motion for summary judgment pursuant to RCFC 56, along with an opposition to the defendant's motion, arguing that the Commandant was not authorized to discharge the plaintiff, as any delegation of authority from the Secretary of Transportation on January 6, 1987, was contrary to the express published reservation of authority in the *Code of Federal Regulations*. Oral argument was conducted on May 11, 1999, at which time the parties concurred that their pleadings should be treated as motions for summary judgment.

Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar both in language and effect.[3] Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

RCFC 56(c) provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Creppel v. United States*, 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1306 (Fed.Cir.1992); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991); *Rust Communications*

*Group, Inc. v. United States*, 20 Cl.Ct. 392, 394 (1990). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury [trier of fact] could return a verdict for the nonmoving party." *Id.; see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd*, 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. 2505. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the nonmoving party cannot present evidence to support its case under any scenario, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presump-

---

**3.** In general, the rules of this court are patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the rules of this court, including RCFC 56. *See Jay v. Sec'y*

*DHHS*, 998 F.2d 979, 982 (Fed.Cir.1993); *Imperial Van Lines Int'l, Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States*, 17 Cl.Ct. 67, 70 (1989).

tions and inferences runs. *Id.; see also Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment, to produce evidence showing the absence of a genuine issue of material fact, may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. 2548; *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. at 679.

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party will need to go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions. *Id.*

In the above-captioned case, the parties agree that summary judgment is appropriate and have filed affidavits, documents and joint stipulations of fact. Moreover, no material issues of disputed fact have been identified by the parties or the court.

The defendant states that the Commandant of the Coast Guard was lawfully delegated the authority to approve the proceedings, findings and recommendations of the board of review, and was authorized to involuntarily discharge the plaintiff from the service. The government argues that the delegation of authority from the Secretary of Transportation on January 6, 1987 to the Commandant was effective, despite not having been published, as it was a rule of internal agency procedure, and that the plaintiff cannot establish an adverse impact from the failure to publish the delegation order. The defendant also suggests that even in the absence of the January 6, 1987 delegation, the Commandant is empowered to act for the Secretary of Transportation in making decisions that directly relate to the Commandant's duties.

The plaintiff contends that the Secretary's 1967 published reservation to himself, or to a delegatee within the Office of the Secretary, to approve the involuntary discharge of Coast Guard officers, such as Mr. Nolan, takes precedence over the January 6, 1987 internal delegation of authority from the Secretary of Transportation to the Commandant. The plaintiff asserts that the government's argument that there was no impact upon the plaintiff as a result of the failure to publish the January 6, 1987 delegation of authority, is irrelevant because the issue is not the obligation to publish the delegation, but rather the existence of contrary regulations. Mr. Nolan also argues that he was prejudiced because, by removing secretarial review from the involuntary discharge process, the plaintiff "was denied his one opportunity for *civilian* review." (emphasis in original). The plaintiff adds that there was loss of commission, along with loss of pay and allowances, as a result of the Commandant's allegedly unauthorized discharge. The plaintiff also states that the defendant's argument, suggesting that the Commandant is automatically cloaked with the authority of the Secretary of Transportation in matters pertaining to assigned Coast Guard duties, is contrary to the agency's efforts to write and publish express reservations and delegations, and contrary to the express reservation applicable to the instant action that only the Secretary, or a delegatee within the Secretary's Office, was authorized to involuntarily discharge officers from the Coast Guard.

As a general proposition, the United States Court of Appeals for the Federal Circuit, in *Voge v. United States*, 844 F.2d 776, 779

(Fed.Cir.), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988), has emphasized that "[j]udicial deference must be 'at its apogee' in matters pertaining to the military and national defense." Moreover, it has been stated that "[s]trong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters," *Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979) (citing *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); *Mindes v. Seaman*, 453 F.2d 197 (5th Cir.1971)), because, "it would be hard to measure the damaging effect of shifting this type of sensitive personnel and management decision from trained military professionals, to a nonspecialist judiciary ...," *Taylor v. United States*, 33 Fed.Cl. 54, 58 (1995).[4] The United States Supreme Court has noted:

> judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Orloff v. Willoughby*, 345 U.S. at 93–94, 73 S.Ct. 534. In the instant case, although the military service branch at issue is located within a civilian agency, the Department of Transportation, 14 U.S.C. § 1 makes it evident that the Coast Guard is to be considered "a military service and branch of the armed forces."

In *D & W Food Centers, Inc. v. Block*, 786 F.2d 751 (6th Cir.1986), the United States Court of Appeals for the Sixth Circuit addressed when rules must be published, as follows:

> An agency pronouncement must be published if it is of such a nature that knowledge of it is needed to keep parties informed of the agency's requirement as a guide for their conduct. *United States v. Hayes*, 325 F.2d 307, 309 (4th Cir.1963) (per curiam). An interpretation is not "of general applicability" if (1) only a clarification or explanation of existing laws is expressed, and (2) the interpretation results in no significant impact on any segment of the public. *Anderson v. Butz*, 550 F.2d 459, 463 (9th Cir.1977). Agencies need not publish "interpretative rules, general statements of policy, or rules of agency organization, procedure or practice." 5 U.S.C. § 553(b)(A). However, a rule required to be published which is not published is void, and may not be enforced against a noncomplying party. *Northern California Power Agency v. Morton*, 396 F.Supp. 1187 (D.D.C.1975), *aff'd sub nom. Northern California Power Agency v. Kleppe*, 539 F.2d 243 (D.C.Cir.1976). *See also Anderson*, 550 F.2d at 463; 5 U.S.C. § 552(a)(1).

*D & W Food Centers, Inc. v. Block*, 786 F.2d at 757. It is also correct that the Administrative Procedure Act (APA) specifically states that rule making relating to "a military ... function of the United States," 5 U.S.C. § 553(a)(1) (1988), and "rules of agency organization, procedure, or practice," 5 U.S.C. § 553(b)(3)(A) (1988), are exempt from notice and comment requirements. Thus such rules, including delegations and reservations, can be effective regardless of publication in the *Federal Register* or the *Code of Federal Regulations*.

Moreover, courts have affirmed repeatedly an agency's administrative rule making involving delegations of authority which were not published in the *Federal Register* or the *Code of Federal Regulations*. *See United*

---

4. There is also precedent which states that "[t]he merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review." *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed.Cir. 1995) (citing *Orloff v. Willoughby*, 345 U.S. at 94, 73 S.Ct. 534; *Murphy v. United States*, 993 F.2d 871, 874 (Fed.Cir.1993), *cert. denied*, 511 U.S. 1019, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994); *Sargisson v. United States*, 913 F.2d 918, 922 (Fed.Cir.1990); *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983); *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979); *Doggett v. United States*, 207 Ct.Cl. 478, 482, 1975 WL 22827 (1975)).

States v. Saunders, 951 F.2d 1065, 1068 (9th Cir.1991) ("Accordingly, we hold that the Federal Register Act does not mandate the publication of the TDOs [Treasury Delegation Orders] and that, as a consequence, the government's failure to publish them does not affect the validity of the Secretary's delegation of authority to the Commissioner."); Lonsdale v. United States, 919 F.2d 1440, 1446 (10th Cir.1990) ("We conclude, as have other courts, that the APA does not require publication . . . which internally delegate authority to enforce the Internal Revenue laws."); United States v. Goodman, 605 F.2d 870, 887–88 (5th Cir.1979) (holding that unpublished delegation of authority from Attorney General to Acting Administrator of the DEA did not violate either the Federal Register Act or the APA, because internal delegations of authority need not be published and do not "adversely affect" the public); Hogg v. United States, 428 F.2d 274, 280 (6th Cir.1970) ("We hold that the Administrative Procedure Act does not require that all internal delegations of authority from the Attorney General must be published in order to be effective."), cert. denied, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); United States v. McCall, 727 F.Supp. 1252, 1254 (N.D.Ind.1990) ("It is well-settled that rules of agency organization, procedure, or practice need not be published to be effective. The court finds the delegation orders at issue here to be such rules of internal agency procedure, obviating their publication in the Federal Register.") (citing D & W Food Centers, Inc. v. Block, 786 F.2d 751 (6th Cir. 1986); 5 U.S.C. § 553(b)(3)(A)).

■ Based on a reading of 5 U.S.C. § 552 (1988), case precedent suggests that the requirement for publication stems from the government's duty to inform the public by publishing those matters that may adversely impact a member of the public. See Hogg v. United States, 428 F.2d at 280; United States v. McCall, 727 F.Supp. at 1254. Internal delegations and appointments of authority have previously been viewed as not adversely impacting the public. See United States v. Goodman, 605 F.2d at 888; Hogg v. United States, 428 F.2d at 280; United States v. McCall, 727 F.Supp. at 1254 ("McCall has not advanced (nor can the court

conceive of) any argument explaining how the Secretary's failure to publish intra-agency delegation orders adversely affects him.").

The case presently before the court, however, presents an issue not addressed in the above-cited and quoted cases. Specifically, although pursuant to the Secretary of Transportation's January 6, 1987 delegation order the Secretary tried to delegate to the Commandant the authority to discharge Coast Guard officers, at the time there was already in existence a prior, and unrevoked, reservation of that same authority published in the Code of Federal Regulations, which was annually republished, both before and after the 1987 delegation order. The instant case would be a simple matter to decide if there had been no contrary, unrevoked reservation. In that scenario, the Secretary of Transportation's January 6, 1987 delegation of authority to the Commandant of the Coast Guard would be lawful and proper and plaintiff's claim would be without foundation, as there is no requirement to publish the delegation. See 5 U.S.C. § 553(b)(3)(A); see, e.g., United States v. Saunders, 951 F.2d at 1068; Lonsdale v. United States, 919 F.2d at 1446; D & W Food Centers, Inc. v. Block, 786 F.2d at 757; United States v. Goodman, 605 F.2d at 887–88; Hogg v. United States, 428 F.2d at 280. However, the incongruity between the older, and annually republished, regulation exclusively reserving the authority to remove officers involuntarily to the Secretary, or a delagatee of the Secretary within the Secretary's Office, and the unpublished January 6, 1987 intra-agency delegation to make discharge decisions to the Commandant, demands a different legal analysis from that adopted in the cases noted above.

It is not challenged that on January 6, 1987, the agency attempted, by act of then Secretary of Transportation Dole, to provide an express delegation of the authority to involuntarily discharge Coast Guard officers pursuant to 14 U.S.C. § 326 to the Commandant of the Coast Guard. In 1987, when Secretary Dole issued her delegation order, however, there was in effect a regulatory provision reserving the discharge authority to the Secretary, or a delegatee within the Office of the Secretary, which had been pub-

lished and reissued each year in the *Federal Register* since 1967. In the much later 1996 corrective publication in the *Federal Register,* the Department of Transportation indicates that in 1987 Secretary Dole appears to have intended to supersede the reservation of authority to involuntarily discharge officers and to allow the Commandant to act on the Secretary's behalf for an indefinite period of time and without limitation. The Department of Transportation, however, repeatedly and annually continued to include the reservation of the Secretary's authority to discharge in its regulations that were published in the *Code of Federal Regulations* from 1967 through and including the 1996 edition.[5] In fact, no fewer than ten (10) complete editions of the *Code of Federal Regulations* appeared that not only failed to incorporate or acknowledge the January 6, 1987 delegation, but specifically continued to reserve discharge authority to the Secretary or a delegatee within the Office of the Secretary.

 "It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all ...." *Voge v. United States,* 844 F.2d at 779. "An agency is bound by the express terms of its regulations until it amends or revokes them." *Clean Ocean Action v. York,* 57 F.3d 328, 333 (3d Cir.1995) (citing *Facchiano Const. Co., Inc. v. U.S. Dept. of Labor,* 987 F.2d 206, 213 (3d Cir.), *cert. denied,* 510 U.S. 822, 114 S.Ct. 80, 126 L.Ed.2d 48 (1993) (citing *United States v. Nixon,* 418 U.S. 683, 695–96, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)); *Accardi v. Shaughnessy,* 347 U.S. 260, 266–67, 74 S.Ct. 499, 98 L.Ed. 681 (1954)). This court has held that: "A government agency is legally bound to adhere to both the governing statute and to its own regulations, even though it might not have been required to issue them at all. *E.g., Sargisson v. United States,* 913 F.2d 918, 921 (Fed.Cir.1990) (citing *Vitarelli v. Seaton,* 359 U.S. 535, 539, 79 S.Ct. 968, 3

L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 377, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Voge v. United States,* 844 F.2d 776, 779 (Fed.Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988))." *Finkelstein v. United States,* 29 Fed.Cl. 611, 616 (1993).

Under 44 U.S.C. § 1510(e) (1988) of the Federal Register Act:

**Code of Federal Regulations**

\* \* \*

(e) The codified documents of the several agencies published in the supplemental edition of the Federal Register under this section, as amended by documents subsequently filed with the Office [of the Federal Register] and published in the daily issues of the Federal Register, shall be prima facie evidence of the text of the documents and of the fact that they are in effect on and after the date of publication.

Congress, therefore, plainly contemplated that the amendment or revocation of a regulation published in the *Code of Federal Regulations* is effected by a subsequent publication of a document in the *Federal Register,* in that the *Federal Register* "serves as a daily supplement to the Code of Federal Regulations." 1 C.F.R. § 5.5 (1998).

Moreover, under section 3(a)(1) of the original Administrative Procedure Act, agencies were required to publish delegations of authority as part of their mandatory *Federal Register* description of agency organization. 60 Stat. 237 (1946). Consistent with this publication requirement, various powers conferred on the Secretary of the Treasury by legislation, Pub.L. No. 88–130, 77 Stat. 175, 189 (1963), that included section 326 were delegated to the Commandant by publication. *See* Treas. Dep't Order No. 167–56, 28 Fed. Reg. 11,570 (1963). The Commandant, however, specifically was not granted the power to approve involuntary discharges of officers pursuant to 14 U.S.C. § 326. *Id.* When the

---

5. It might be possible to argue that Secretary of Transportation Dole's delegation to the Commandant was in effect from January 6, 1987, when it was signed, until the next annual issuance of the *Code of Federal Regulations* on October 1, 1987, which once again expressly reserved the authority to involuntarily discharge officers of the Coast Guard to the Secretary, or a delegatee within the Office of the Secretary. Mr. Nolan's alleged discharge pursuant to approval by the Commandant occurred on March 1, 1993, well after the window when the January 6, 1987 delegation to the Commandant was possibly in force.

Department of Transportation came into being on April 1, 1967 and assumed control of the Coast Guard, it published its secretarial delegations and reservations, including the reservation of authority to involuntarily discharge Coast Guard officers consistent with the Department of Treasury's 1963 nondelegation. 32 Fed.Reg. 5606, 5608 (1967).

The parties have stipulated that after the creation of the Department of Transportation, Congress repealed the requirement to publish delegations in the *Federal Register* and the *Code of Federal Regulations*, 81 Stat. 54 (1967), thus leaving "each agency [with] discretion to determine what delegations it should include in its descriptions of agency organization." U.S. Department of Justice, *Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act* 7 (June 1967), 2 Jacob A. Stein, Glenn A. Mitchell & Basil J. Mezines, *Administrative Law* App. 7A–13 (1998). The parties also have stipulated that the Department of Transportation "has exercised that discretion in favor of continuing to publish secretarial delegations," *see* 49 C.F.R. § 1.45–47, and "has also continued to publish secretarial reservations of authority," *see* 49 C.F.R. § 1.44.

■ A reservation of authority is the diametric opposite of a delegation. Assuming, however, that after 1967, delegations and reservations stand on the same discretionary footing for purposes of not requiring *Federal Register* or *Code of Federal Regulations* publication, because the Department of Transportation continued to publish the reservation of the Secretary's authority to remove officers from active duty, the codified version remained in effect until repealed by further *Federal Register* and *Code of Federal Regulations* publication. Such repeal finally occurred on July 3, 1996 at 61 Fed.Reg. 34,745. *See Finkelstein v. United States,* 29 Fed.Cl. at 616 ("A government agency is legally bound to adhere to both the governing statute and to its own regulations, even though it might not have been required to issue them at all."). Thus, an agency, by a published exercise of its authority and administration rules, may take on procedural obligations that it otherwise would not have had to fol-

low. *See Sargisson v. United States,* 913 F.2d at 921; *Voge v. United States,* 844 F.2d at 779; *see also Rodway v. U.S. Dep't of Agriculture,* 514 F.2d 809, 813–14 (D.C.Cir. 1975). The United States Court of Appeals for the Federal Circuit examined the obligations assumed through publication in *Sargisson v. United States:*

The Secretary of the Air Force is authorized to release reserve officers from active duty under 10 U.S.C. § 681(a) (1970): "Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty." The statute does not place any procedural or substantive limitations on the Secretary's discretion. *Woodward v. United States,* 871 F.2d 1068, 1071 (Fed.Cir.1989). Nevertheless, once the Secretary promulgated regulations and instructions and made them the basis for Sargisson's release, his action became subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all. *See Vitarelli v. Seaton,* 359 U.S. 535, 539, 79 S.Ct. 968, 972, 3 L.Ed.2d 1012 (1959) ("Since ... the Secretary gratuitously decided to give a reason, ... he was obligated to conform to the procedural standards he had formulated ... for the dismissal of employees on [those] grounds," citing *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957)); *see also Voge v. United States,* 844 F.2d 776, 779 (Fed.Cir.1988) ("It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all ...."); ...

*Sargisson v. United States,* 913 F.2d at 921.

■ The Federal Register Act's directive that *Federal Register* and *Code of Federal Regulations* publication of codified documents "shall be prima facie evidence ... of the fact that they are in effect on and after the date of publication," 44 U.S.C. § 1510(e), would be totally frustrated by permitting the January 6, 1987 delegation order to have effect contrary to the reservation codified in the *Code of Federal Regulations* until 1996. The instant case is further compounded be-

cause the reservation of the Secretary's authority to remove included in 14 U.S.C. § 326, was included in ten (10) subsequent annual publications in the *Code of Federal Regulations* from 1987 to 1996, even though it would not have been necessary to publish in the *Federal Register* a delegation of authority from the Secretary of Transportation to the Commandant to effect removal of Coast Guard officers from active duty. To allow a published regulation to be revoked by an internal, unpublished delegation or action would appear to violate the fundamental fairness requirements of notice to the public. The critical fact is that the initial and continued publication in the *Federal Register* and the *Code of Federal Regulations* created a reasonable expectation that any revocation of the same reservation likewise would be published. A failure to publish the delegation and change of policy resulting in a revocation of the reservation, therefore, adversely impacts members of the public who are entitled to notice of change. The court, therefore, concludes that in 1967, the Secretary of Transportation reserved and specifically did not delegate the authority to involuntarily discharge an officer of the Coast Guard (*see* 49 C.F.R. § 1.5(q)(9) (1967)), and did not effectively delegate that authority to the Commandant until July 3, 1996 (*see* 61 Fed. Reg. at 34, 745), with the possible exception of a limited window from January 6, 1987 to October 1, 1987.

In 1996, the Secretary of Transportation, Frederico F. Peña, revoked the longstanding reservation of authority to involuntarily remove Coast Guard offices from active duty and effectively delegated that authority, from July 3, 1996 forward, to the Commandant by published regulation. 61 Fed.Reg. at 34,745. In the final notice's preamble to the regulations, Secretary Pena expressly recognized that such revisions to the codified and published regulatory reservation were "necessary changes." *Id.* For all these reasons, the Department of Transportation's published regulations reserving the Secretary's authority to involuntarily remove Coast Guard officers pursuant to 14 U.S.C. § 326 take priority over the contrary unpublished 1987 internal agency delegation. In sum, at the time the Commandant approved Mr. Nolan's involuntary discharge, the authority to dis-

charge was governed by the regulatory reservation of authority to the Secretary of Transportation then codified, published and in effect.

Finally, the government argues that the Commandant had the power to approve Mr. Nolan's discharge regardless of whether Secretary of Transportation Dole's 1987 order, which attempted to delegate authority to remove officers from active duty to the Commandant indefinitely, was effective at the time the Commandant approved the discharge of Mr. Nolan on December 17, 1992. The defendant cites *Law v. United States*, 26 Cl.Ct. 382 (1992), *aff'd,* 11 F.3d 1061 (Fed. Cir.1993), for the proposition that the Commandant can act as the Secretary of Transportation's *alter ego,* or rather, that the Commandant was cloaked with the authority of the Secretary, despite contrary regulations.

This court notes that the decision in *Law v. United States* addressed the relationship between the President of the United States and a member of the Cabinet. This relationship is unique and cannot be invoked as a basis for a broader principle that subordinates in the government are automatically cloaked with the authority of their superiors. Moreover, it is apparent in the instant action that the Coast Guard and Department of Transportation thought revision of the reservation and delegation regulations was necessary to effect a delegation of authority, to involuntarily discharge an officer, to the Commandant of the Coast Guard, prompting the 1996 changes that were incorporated in the *Code of Federal Regulations.* *See* 61 Fed.Reg. 34,745. The case of *Law v. United States* is not dispositive regarding the factual or legal analysis in the instant action.

This court holds that plaintiff Guy R. Nolan is entitled to judgment as a matter of law.

## CONCLUSION

The plaintiff's motion for summary judgment is **GRANTED**. The defendant's motion for summary judgment, which was converted from a motion to dismiss, is **DENIED**.

**IT IS SO ORDERED.**