# United States Court of Appeals for the Federal Circuit

---

**JAMES R. RUDISILL,**
*Claimant-Appellee*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellant*

---

2020-1637

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-4134, Chief Judge Margaret C. Bartley, Judge Michael P. Allen, Senior Judge Mary J. Schoelen.

---

Decided: July 8, 2021

---

TIMOTHY L. MCHUGH, Hunton Andrews Kurth LLP, Richmond, VA, argued for claimant-appellee. Also represented by DAVID PARKER; DAVID JOSEPH DEPIPPO, Dominion Resource Services Inc., Richmond, VA.

GALINA I. FOMENKOVA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellant. Also represented by JEFFREY B. CLARK, MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR.; Y. KEN LEE, BRYAN

THOMPSON, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

MICHAEL E. KENNEALLY, Morgan, Lewis & Bockius LLP, Washington, DC, for amici curiae National Veterans Legal Services Program and Veterans Education Success. Also represented by JAMES D. NELSON.

---

Before NEWMAN, DYK, and REYNA, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* NEWMAN.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* DYK.

NEWMAN, *Circuit Judge*.

The United States Court of Appeals for Veterans Claims ("Veterans Court") held that a veteran with multiple periods of qualifying military service is entitled to GI Bill education benefits for each period of service, subject to the legislated limit of a total of 48 aggregate months of education benefits. Applying this holding to veteran James R. Rudisill, the Veterans Court held that he is not limited to the total of 36 months of education benefits set by the Montgomery GI Bill ("Montgomery" or "MGIB") and applicable to his first period of qualifying service, when he also qualifies for later education benefits under a later bill—the Post-9/11 GI Bill.[1] That is, he is entitled to the total of 48 months of aggregate benefits. The Secretary of Veterans Affairs ("Secretary") appeals. On appellate review, we affirm the decision of the Veterans Court.

---

[1] *BO v. Wilkie*, 31 Vet. App. 321 (2019) ("Vet. Ct. Op.").

## BACKGROUND

James R. Rudisill served three periods of active duty military service, as follows: (1) from January 2000 to June 2002 in the Army (30 months); (2) from June 2004 to December 2005 in the Army National Guard (18 months); and, (3) from November 2007 to August 2011 as a commissioned officer in the Army (45 months). He applied for and duly received 25 months and 14 days of education benefits in accordance with the Montgomery GI Bill, 38 U.S.C. § 3011(a), for completion of his college degree.

After his third period of Army service, he applied for education benefits under the Post-9/11 GI Bill, 38 U.S.C. § 3311, to attend the Yale Divinity School graduate program. The Department of Veterans Affairs ("VA") determined that he was entitled to the Post-9/11 benefits, but only for the remaining 10 months and 16 days of the 36 months authorized for Montgomery benefits. The VA held that he was not entitled to benefits beyond a total of 36 months.

Mr. Rudisill appealed to the Board of Veterans' Appeals ("BVA"), seeking education benefits up to the statutory cap of 48 months for multiple terms of service. The BVA sustained the VA's ruling that Mr. Rudisill's total benefits were limited to the unused period of his 36-months entitlement under the Montgomery GI Bill. No. 16-01 431, 2016 WL 4653284 (Bd. Vet. App. July 14, 2016) ("BVA Op."). The BVA held that his "election to use Post-9/11 benefits in lieu of MGIB benefits was irrevocable and limited his eligibility to the unused remainder of his MGIB entitlement." Sec'y Br. 12 (citing BVA Op. at *3).

Concerning the statutory cap of 48 months of aggregate benefits, the BVA acknowledged that "[w]here an individual is eligible for two or more education programs, the aggregate period for which any person may receive assistance may not exceed 48 months." BVA Op. at *3. But the BVA held as to Mr. Rudisill that "[t]here is no provision

authorizing 12 additional months of entitlement under Chapter 33 on top of 36 total months of combined benefits under Chapter 30 and Chapter 33." *Id.* The BVA reasoned that the entitlement period for Chapter 33 benefits is limited by 38 C.F.R. § 21.9550(b)(1), stating as follows:

> An individual who, as of August 1, 2009, has used entitlement under 38 U.S.C. Chapter 30, but retains unused entitlement under that chapter, makes an irrevocable election to receive educational assistance under the provisions of Chapter 30, will be limited to one month (or partial month) of entitlement under Chapter 33 for each month (or partial month) of unused entitlement under Chapter 30 (including any months of Chapter 30 entitlement previously transferred to a dependent that the individual has revoked). In short, if an individual is eligible for benefits under Chapter 30, and he or she uses some of that entitlement before irrevocably electing to receive Chapter 33 benefits in lieu of benefits under Chapter 30, that individual may be awarded the equivalent of the entitlement that remained unused under Chapter 30. There is no provision authorizing 12 additional months of entitlement under Chapter 33 on top of 36 total months of combined benefits under Chapter 30 and Chapter 33.

BVA Op. at *3 (internal citation omitted).

On Mr. Rudisill's appeal, the Veterans Court reversed the BVA and held that the veteran is entitled to education benefits for each of his periods of separately qualifying service, and that he is entitled to the aggregate cap of 48 months of benefits. The Secretary appeals, stating that the Veterans Court did not correctly interpret the GI Bill statutes and regulations. As we shall discuss, we conclude that the Veterans Court's interpretation was in conformity with law.

The "GI Bills" have a long and salutary history. The original GI Bill was the Servicemen's Readjustment Act of 1944, to provide education and other benefits for veterans of World War II. The GI Bill provided payment of tuition and designated expenses for college or trade school education. Similar bills were enacted after successive periods of conflict, again to provide education and other benefits for veterans. *See, e.g.*, Veterans' Readjustment Assistance Act of 1952, 66 Stat. 663 ("Korean War GI Bill"); Veterans' Readjustment Benefits Act of 1966, 80 Stat. 12 ("Cold War GI Bill"); the Veterans' Education and Employment Assistance Act of 1976, 90 Stat. 2383 ("Post-Korean Conflict and Vietnam Era GI Bill"); and Veterans' Rehabilitation and Education Amendments of 1980, 94 Stat. 2171 ("Post-Vietnam Era Veterans Educational Assistance Program").

The statutes relevant to this action are the Montgomery GI Bill of 1985, codified at chapter 30 of title 38 United States Code, and the Post-9/11 GI Bill of 2008, codified at chapter 33 of title 38 United States Code. Following are relevant provisions of these GI Bills:

### *The Montgomery GI Bill*

The Montgomery GI Bill states the purposes of education benefits for veterans in its opening section:

> 38 U.S.C. § 3001. The purposes of this chapter are . . . to aid in the recruitment and retention of highly qualified personnel for both the active and reserve components of the Armed Forces . . . [and] to enhance our Nation's competitiveness through the development of a more highly educated and productive work force.

Section 3011(a) defines the veterans who are entitled to Montgomery GI Bill benefits:

> (a) Except as provided in subsection (c) of this section, each individual—

(1) who—

(A) after June 30, 1985, first becomes a member of the Armed Forces or first enters on active duty as a member of the Armed Forces and—

(i) who (I) in the case of an individual whose obligated period of active duty is three years or more, serves at least three years of continuous active duty in the Armed Forces, or (II) in the case of an individual whose obligated period of active duty is less than three years, serves at least two years of continuous active duty in the Armed Forces.

Section 3013(a)(1) provides that veterans are entitled to "36 months of educational assistance benefits under this chapter."

The Montgomery education benefits are provided as a monthly stipend at a fixed rate, regardless of actual tuition costs, and do not include payment for books or living expenses. *See* 38 U.S.C. § 3015. This was the pattern of all the preceding GI Bills.

### *The Post-9/11 GI Bill*

The Post-9/11 GI Bill applies to education costs incurred, starting in 2011, by veterans with an aggregate of at least 36 months of active duty service after September 11, 2001. This Bill "improve[s] educational assistance for veterans who served in the Armed Forces after September 11, 2001." 124 Stat. 4106 (approved Jan. 4, 2011). Section 3311 defines the veterans who are entitled to Post-9/11 GI Bill benefits:

38 U.S.C. § 3311(b). Covered Individuals. . . . An individual who—

(A) commencing on or after September 11, 2001, serves an aggregate of at least 36 months on active duty in the Armed Forces (including service on active duty in entry level and skill training); and

(B) after completion of service described in subparagraph (A)—

(i) continues on active duty; or

(ii) is discharged or released from active duty as described in subsection (c).

Covered veterans may receive up to 36 months of Post-9/11 GI Bill benefits.  38 U.S.C. § 3312(a).

The Post-9/11 GI Bill provided broader benefits than the prior bills, including payment of the actual amount of tuition and fees plus a monthly housing stipend equal to the basic military housing allowance in the area in which the campus is located; plus a lump sum amount for books, supplies, equipment, and other costs.  38 U.S.C. § 3313(c)(1)(B)(iv).

The Post-9/11 GI Bill includes provisions relevant to multiple periods of service, and allows eligible veterans to elect the education assistance under this Bill:

> 38 U.S.C. § 3322(h).  Bar To Duplication of Eligibility Based on a Single Event or Period of Service.—
>
> (1) Active-duty service.—
>
> An individual with qualifying service in the Armed Forces that establishes eligibility on the part of such individual for educational assistance under this chapter . . . shall elect (in such form and manner as the Secretary may prescribe) under which authority such service is to be credited.
>
> &ast; &ast; &ast;
>
> § 3327(a).  Individuals Eligible To Elect Participation in Post-9/11 Educational Assistance.—
>
> An individual may elect to receive educational assistance under this chapter if such individual—(1)

> as of August, 2009 . . . has used, but retains un-
> used, entitlement under [the Montgomery GI Bill].

Section 3327(d)(2) authorizes veterans who were using pre-
viously available GI Bill benefits to switch to the more in-
clusive Post-9/11 benefits for "the number of months of
unused entitlement." However, the Montgomery GI Bill
was not terminated and did not expire with enactment of
the Post-9/11 GI Bill. The following text of the Post-9/11
GI Bill produced the uncertainty reflected in the rulings of
the BVA and the Veterans Court that are the subject of this
appeal:

> 38 U.S.C. § 3327(d)(2). Limitation on entitlement
> for certain individuals.— In the case of an individ-
> ual making an election under subsection
> (a) . . . , the number of months of entitlement of the
> individual to educational assistance under this
> chapter shall be the number of months equal to—
> (A) the number of months of unused entitlement of
> the individual under [the Montgomery GI Bill] as
> of the date of the election[.]

The Post-9/11 GI Bill continued to recite, pursuant to §
3312(a), the aggregate period of 48 months of education as-
sistance for veterans with more than one period of qualify-
ing military service under § 3695:

> 38 U.S.C. § 3695. Limitation on period of assis-
> tance under two or more programs.
>
> (a) The aggregate period for which any person may
> receive assistance under two or more of the provi-
> sions of law listed below may not exceed 48 months
> (or the part-time equivalent thereof).
>
> [listing the eight GI Bills in effect, including the
> Montgomery GI Bill and the Post-9/11 GI Bill].

After his third period of military service Mr. Rudisill
sought further education, and applied for Post-9/11 GI Bill

benefits. He had previously received 25 months and 14 days of Montgomery benefits, and in view of the cap of 48 months, he requested 22 months and 16 days of Post-9/11 benefits. He submitted VA Form 22-1990, "Application for VA Educational Benefits," and in the field "education benefit being applied for" he selected "Chapter 33 [Post-9/11] in Lieu of Chapter 30 [Montgomery]." J.A. 541.

The VA determined that he was entitled to only 10 months and 16 days of benefits, measured as the unused remainder of his 36-month Montgomery entitlement. The VA held that no additional entitlement arose, and that the 48-month statutory cap for veterans with multiple periods of service did not apply. The VA explained:

> Under the regulations which govern the Post 9/11 GI Bill, a client who elects to receive benefit under the Post 9/11 GI Bill and who is eligible for the Montgomery GI Bill (Chapter 30) benefit is required to make an irrevocable election to relinquish his Chapter 30 benefits when claiming the Post 9/11 GI Bill. The law further states that entitlement to the Post 9/11 GI Bill will be equal to the client's remaining entitlement under Chapter 30 on the effective date of the client's irrevocable election. . . . Based on [Mr. Rudisill's] election, the law dictates that the VA grants entitlement under the Post-9/11 GI Bill not to exceed his remaining Chapter 30 entitlement.

J.A. 521 (Decision, denying Mr. Rudisill's request for additional entitlement under the Post-9/11 GI Bill).

Mr. Rudisill appealed to the BVA, arguing that the 48-month total applies by statute to veterans with separate qualifying tours of military service. The BVA rejected that argument, stating that Mr. Rudisill's election (on Form 22-1990) to use Post-9/11 benefits in lieu of Montgomery benefits limited his total eligibility to the unused remainder of his Montgomery 36-month entitlement. BVA Op. at *4

("[T]he Veteran's completed online application via VA Form 22-1990 in March 2015 was very clear that he did elect Chapter 33 in lieu of Chapter 30 benefits, that this election was irrevocable and could not be changed, and that his benefits under Chapter 33 would be limited to the time remaining under his Chapter 30 benefits unless he first used all of the benefits under Chapter 30 before electing Chapter 33.").

The Veterans Court reversed the BVA's decision. The Veterans Court held that a veteran with multiple periods of service who uses but does not exhaust Montgomery education benefits, and then applies for Post-9/11 benefits after a separate period of service, is not limited to the total of 36 months provided for the Montgomery program. The Veterans Court explained that "section 3327 does not apply in this case," *i.e.* in cases of "individuals with dual entitlement based on *multiple* periods of service," but rather, applies only in cases of "individuals with dual entitlement based on a *single* period of service." Vet. Ct. Op. at 332–34 (emphases in original). The Veterans Court held that Mr. Rudisill's third period of service separately entitled him to a full term of education benefits under the Post-9/11 GI Bill, subject to the 48-month aggregate cap.

On this appeal, the Secretary argues that the Veterans Court misinterpreted the statute. The Secretary states that "§ 3327(a)(1)(A) authorizes veterans who have used some, but not all, of their [Montgomery] benefits to switch to using Post-9/11 benefits. However, § 3327(d)(2)(A) limits the entitlement to Post-9/11 benefits for that particular subset of veterans to 'the number of months of unused entitlement of the individual under' MGIB 'as of the date of the election.'" Sec'y Br. 9.

DISCUSSION

I

### *Jurisdiction*

Mr. Rudisill supports the decision of the Veterans Court, but challenges our jurisdiction to receive this appeal, based on the Solicitor General's tardy approval of the appeal filing as required by 28 C.F.R. § 0.20(b). Mr. Rudisill states that the appeal was not timely filed.

Federal Circuit jurisdiction of decisions of the Veterans Court is assigned by 38 U.S.C. § 7292(a), which authorizes our review of the "validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof." The notice of appeal must be filed within 60 days of the final judgment. *Id.*; 28 U.S.C. § 2107(b). When the United States is the appellant, 28 U.S.C. § 518(a) provides that "the Attorney General and the Solicitor General shall conduct and argue suits and appeals in . . . the United States Court of Appeals for the Federal Circuit" unless "the Attorney General in a particular case directs otherwise."

In turn, the Solicitor General is responsible for "[d]etermining whether, and to what extent, appeals will be taken by the Government to all appellate courts." 28 C.F.R. § 0.20(b). The filing of a notice of appeal is deemed to be a determination "whether" an appeal will be taken, which the Solicitor General is required to approve. *Id.*

Here the Veterans Court entered its final judgment on January 7, 2020. Fifty-nine days later, on March 6, 2020, the Secretary filed a Notice of Appeal, represented by the Attorney General. On May 27, 2020, the Solicitor General filed the requisite approval of the filing of the appeal. This led to a Motion for Extension of Time; *see* Sec'y Reply in Supp. of Mot. for Extension of Time, at 3 (ECF No. 19) ("[T]he Solicitor General has completed his review. On

May 27, 2020 undersigned counsel received official authorization to proceed with this appeal.").

Mr. Rudisill argues that this appeal was not timely filed. He states that *Federal Election Commission v. NRA Political Victory Fund*, 513 U.S. 88 (1994) ("*FEC*") requires this result, for the Supreme Court held that the agency's petition for *certiorari* was untimely because it was not authorized by the Solicitor General until after the time for filing the petition had expired, although the petition was filed within the statutory period. The Court applied 28 C.F.R. § 0.20(a), the Supreme Court counterpart of 28 C.F.R. § 0.20(b), and concluded: "[T]he FEC is not authorized to petition for certiorari in this Court on its own, and that the effort of the Solicitor General to authorize the FEC's petition after the time for filing it had expired did not breathe life into it." *Id.* at 90.

The Secretary responds by distinguishing *FEC* on the facts thereof, where the initial filing was not by the Attorney General but by the FEC in its own name. The Secretary cites several circuit court decisions where the Attorney General filed a Notice of Appeal within the statutory period and the Solicitor General's authorization was permitted to be filed later. For example, in *Hogg v. United States*, 428 F.2d 274 (6th Cir. 1970), Hogg argued that "the Government's timely notice of appeal . . . is fatally defective because it was filed by the United States Attorney at a time when the Solicitor General had not authorized the appeal." *Id.* at 277. The Sixth Circuit rejected this theory, reasoning that the "Attorney General has plenary power over the conduct of litigation to which the United States is a party" and a "regulation defining the jurisdiction of the Solicitor General" does not "foreclose[] the Attorney General from directing that a notice of appeal be filed," *id.* at 278, thereby meeting the jurisdictional requirements.

In *United States v. Hill*, 19 F.3d 984 (5th Cir. 1994), the Fifth Circuit applied the reasoning in *Hogg* to the current

version of 28 C.F.R. § 0.20(b), and ruled that any delay in approval by the Solicitor General does not negate the timeliness of a Notice of Appeal filed by the Attorney General, and they have authority to file protective notices of appeal pending the Solicitor General's decision whether to authorize the appeal.

We discern no reason to depart from this rationale. The Secretary explains: "given the extensive and time-consuming process the Government follows in order to pursue affirmative appeals, it is not uncommon for so-called 'protective' notices of appeal to be filed, pending a final decision from the Solicitor General." Sec'y Reply Br. 2 (internal citation omitted). This practice is "routine and consistent with the Solicitor General's role in authorizing appeals." *Id.* at 3. The Department of Justice Directive 1-15, § 6, at 28 C.F.R. Pt. 0, Subpt. Y., App. states: "Until the Solicitor General has made a decision whether an appeal will be taken, the Government attorney handling the case must take all necessary procedural actions to preserve the Government's right to take an appeal, including filing a protective notice of appeal when the time to file a notice of appeal is about to expire and the Solicitor General has not yet made a decision."

We conclude that the jurisdictional requirement for filing this appeal was met by the filing of the notice of appeal by the Attorney General within 60 days, and its subsequent approval by the Solicitor General.

II

### *Statutory Interpretation: Veterans With Multiple Periods of Qualifying Service*

The Veterans Court stated: "The precise question the Court must answer in this appeal is: how does the law treat a veteran who qualifies for the Montgomery GI Bill under one period of service and the Post-9/11 GI Bill under an entirely separate qualifying period or periods of service?"

Vet. Ct. Op. at 9.  The government's position is that, for veterans with multiple periods of service, "§ 3327(a)(1)(A) authorizes veterans who have used some, but not all, of their MGIB benefits to switch to using Post-9/11 benefits. However, § 327(d)(2)(A) limits the entitlement to Post-9/11 benefits for that particular subset of veterans to 'the number of months of unused entitlement of the individual under' MGIB 'as of the date of the election.'"  Sec'y Br. 9 (quoting § 3327(d)(2)(A)).  That was the ruling of the BVA.

The Veterans Court did not agree.  The court reviewed the history and legislative intent of the GI Bills, and concluded that the correct interpretation of § 3327(d)(2)(A) is that "separate periods of qualifying service allow a veteran such as [Mr. Rudisill] to receive full benefits under both programs subject to an aggregate cap on all such benefits." Vet. Ct. Op. at 328.  The statute states:

> [T]he number of months of entitlement of the individual to educational assistance under this chapter shall be the number of months equal to— (A) the number of months of unused entitlement of the individual under [the Montgomery GI Bill] as of the date of the election.

38 US.C. § 3327(d)(2).  The Veterans Court held that § 3327 does not apply to veterans having periods of intermittent qualifying service; rather, those veterans are subject to the 48-month aggregate cap.

Again on this appeal, the Secretary states that since Mr. Rudisill drew on his first two periods of active service for Montgomery GI Bill benefits, and used 25 months 14 days thereof, he was entitled to only the remaining period of 10 months 16 days for the Post-9/11 GI Bill benefits he elected based on his subsequent qualifying service.  The Secretary thus argues that the applicable cap for Mr. Rudisill is the period of entitlement for Montgomery benefits, that is, 36 months.  Sec'y Br. 28 ("Mr. Rudisill's

entitlement to Post-9/11 benefits [is] limited to his period of unused [Montgomery] entitlement.").

The Veterans Court did not share the Secretary's statutory interpretation, and we agree. The legislation explicitly provides additional benefits to veterans with multiple periods of qualifying service, whereby each period of service qualifies for education benefits, with the limit that: "The aggregate period for which any person may receive assistance under two or more of the provisions of law listed below may not exceed 48 months (or the part-time equivalent thereof)," codified at 38 U.S.C. § 3695(a). This provision has been in each GI Bill since at least 1968. *See Finley v. United States*, 490 U.S. 545, 554 (1989) ("Under established canons of statutory construction, 'it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.'" (quoting *Anderson v. Pac. Coast S.S. Co.*, 225 U.S. 187, 199 (1912)).

The statutory pattern does not support the interpretation urged by the Secretary whereby veterans with multiple periods of qualifying service would be limited to the cap applicable to the initial period. The Veterans Court correctly held that each period of service earns education benefits, subject to its cap of 48 aggregate months of benefits.

## CONCLUSION

Mr. Rudisill is entitled to Post-9/11 GI Bill benefits for his graduate education, subject to the cap of 48 aggregate months of benefits including the period for which he received Montgomery benefits.

## **AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**JAMES R. RUDISILL,**
*Claimant-Appellee*

**v.**

**DENIS MCDONOUGH, SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellant*

---

2020-1637

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-4134, Chief Judge Margaret C. Bartley, Judge Michael P. Allen, Senior Judge Mary J. Schoelen.

---

DYK, *Circuit Judge*, concurring in part and dissenting in part.

The majority holds that the Secretary of Veterans Affairs timely filed the notice of appeal in this case. Maj. Op. 13. I agree and join Part I of the majority's opinion.

In Part II, the majority also holds that all "veterans with multiple periods of qualifying service" are entitled to "additional benefits" up to "48 aggregate months of benefits." Maj. Op. 15. This seems to me to be directly contradictory to the statute (38 U.S.C. § 3327), as the government argues. Section 3327 unambiguously limits the educational benefits available to all veterans who switch from

using the Montgomery GI Bill ("Montgomery") to the Post-9/11 GI Bill ("Post-9/11"), and who have not exhausted their Montgomery eligibility, to the remaining period of eligibility for Montgomery benefits, which here is less than what the majority allows.

The statute defines the scope of veteran educational assistance. Depending on their service, veterans may be eligible for educational assistance under multiple programs at the same time, including the Montgomery and Post-9/11 programs. By statute, there is an overall 48-month limit on the receipt of educational assistance. 38 U.S.C. § 3695(a). According to the majority, this is the only limit that applies here. However, a second and additional statutory limit also applies when a veteran initially elects to receive assistance under the Montgomery program, but later elects to switch to Post-9/11 assistance while retaining unused entitlement under the Montgomery program. *Id.* § 3327(a)(1)(A). Under this circumstance,

> the number of months of entitlement of the individual to educational assistance under [the chapter governing Post-9/11 entitlement] shall be the number of months equal to . . . the number of months of unused entitlement of the individual under chapter 30 of this title [governing Montgomery benefits], as of the date of the election.

*Id.* § 3327(d)(2)(A).[1]

Here, Mr. Rudisill is an "individual" entitled to <u>Post-9/11</u> benefits because "on or after September 11, 2001," he "serve[d] an aggregate of at least 36 months on

---

[1]    The statute provides for an exception, not at issue here, equal to "the number of months, if any, of entitlement revoked by the individual under subsection (c)(1)," which relates to the transfer of basic educational assistance to family members. 38 U.S.C. § 3327(d)(2)(B).

active duty" and  was later honorably discharged from active duty.  *Id.* § 3311(b)(1)(A), (c)(1).  He is additionally an "individual" entitled to <u>Montgomery</u> benefits because "during the period beginning July 1, 1985, and ending September 30, 2030," he "first enter[ed] on active duty as a member of the Armed Forces" and "serve[d] at least three years of continuous active duty," "complete[d] the requirements of a secondary school diploma . . . before applying for benefits," and was later "discharged from active duty with an honorable discharge."  *Id.* § 3011(a).  Finally, Mr. Rudisill made the election described in § 3327(a)(1)(A), switching from the Montgomery program to the Post-9/11 program while he had 10 months and 16 days of unused Montgomery entitlement remaining.  The VA correctly determined that under the explicit language of the statute, Mr. Rudisill was limited to 10 months and 16 days of Post-9/11 benefits and not to the 22 months and 16 days he would be allowed if only the 48-month cap applied.

The majority construes § 3327(d)(2) as applying only to veterans with dual eligibility based on a single period of service, and not to veterans like Mr. Rudisill who have earned benefits for multiple periods of service. Maj. Op. 15.  However, nothing in the language or history of the relevant statutes remotely justifies such an interpretation, and the majority indeed applies little effort to justify its interpretation.  It is not our job to rewrite the statute to achieve a supposedly fair result.  I respectfully dissent.